Chief Justice Marshall
delivered the opinion of the Court.
On the 22 day of February, 1842, M. Hill conveyed a tract of land to E. B. Haskins by deed, reciting the consideration as being secured by four notes for $1095 each, payable in cash notes, and at annual intervals, the two last falling due in the years 1845 and 1846, respectively. On the same 22d February, T. Cross also conveyed to E. B. Haskins about 50 acres of land adjoining the tract just referred to, for the consideration as recited in the deed, of the grantee’s note for $900, dated December 1842, bearing interest from the date and credited by $327 50. When this note fell due is not stated in the deed. But it appears in fact that it was payable with interest in three years after its date, which was also the date of the contract of sale. These deeds were duly recorded, and Haskins being in possession sold the land to H. Muir, and on the 2d day of January, 1845, before either of the two last notes of *278 Hasldns to Hill had become due, conveyed to him both parcels of land, as one tract, for the recited consideration of $3,050 in hand paid, and Muir executed his note to Haskins for $1,350, the part of the consideration which had not in fact been paid. In February 1843, Hill executed to Cross a mortgage conveying a number of slaves, many articles of personal property, and also the two last notes of Haskins to Hill, which are specifically described and stated to be for the price of the land, &c. All being for the security of a debt mentioned in the mortgage. Upon a settlement between Cross and Hill’s administrrtor, and as we understand after the conveyance from Haskins to Muir, the note of Haskins to Hill, falling due in 1846, was assigned to Cross by Hill’s administrator, who retained, in absolute right, the other note. And upon a settlement between Cross and Haskins, made in December 1845, including various items on each side, Cross surrendered to Has-kins the note for $1095, which had been credited by $214, and received from Haskins by assignment the note of Muir for $1350, reduced by a credit to $1250, and Haskins executed his own note to Cross for near $1300, the balance still left.
After all of these transactions, the administrator of Hill having filed a bill for a general settlement of his intestate’s estate, under the act of Assembly, claimed a lien upon the land sold by Hill to Haskins and by the latter to Muir for the amount of the note for $1095 in his hands, and alleged the insolvency of Haskins. Muir, in answer to this claim, avers that he had paid Haskins for the land, except the sum due on the note assigned to Cross; that he had made the payments and received the conveyance in ignorance of the nonpayment by Haskins of part of the price of the land; that Cross knew the facts when he received the assignment of his, Muir’s note, and was moreover notified by him that he would not pay the note, leaving an incumbrance on the land, and prays that if the land is subjected to the lien asserted by the administrator of Hill, his note in the hands of Cross may be credited by the same amount, *279 Cross admits that before the note was actually assigned to him, Muir had told him there would be a difficulty in consequence of the note in the administrator’s hands, but denies that he said he would not pay, &c. And alleges that in a previous conversation, Muir had told him he would pay it* but does not say that the incumbrance was then spoken of by either, and he says that before the last conversation he had agreed to take Muir’s note from Haskins and felt bound to do so. He moreover alleges that as the holder of the note of Haskins to Hill, due in 1846, he had a lien on the land for the amount of that note, and that in the settlement with Haskins, (of 1845,) it was specially agreed and understood that he took the note of Muir (which he says was also a lien on the land) in lieu of the note of Haskins to Hill then surrendered. He also states that a further consideration for the note of Muir was the remnant of the note for $900 which had been executed by Haskins to him (Cross) for the price of the small tract which was included in the sale to Muir, but which had been given up to Haskins on a settlement in 1844. He insists that Muir had constructive notice of the liens from the deeds on record, and believes that he had actual notice when he purchased, but he does not allege that he ever informed Muir that one of the notes of Haskins to Hill was in his hands or that he claimed any lien on account of that note or for any part of the price of the small tract. Muir denies actual notice, as before, and also denies that he had ever made or promised payment after actual notice, or that he had promised payment to Cross at any time unless the incumbrance' should be removed.
There is no evidence outside of these pleadings of what occurred between Cross and Muir. Two settlements between Cross and Haskins are proved by Has-kins, and the second one also by Laprade, who was present. It appears that in the settlement of 1844, various items on both sides were introduced, among which was the note for $900, or the balance remaining due nn it which is nowhere stated, and the result was a. bal-? *280 ánce óf riear $1500 against Haskins for which he exe'r cuted his note. But no further particulars of this settlement are made known. Of the settlement of 1845/ a statement is exhibited which shows various items on each side, among which is the note for $1095, and also the note for near $1500 charged to Haskins, and the note of Muir for $1250 credited to him. But there is nothing either in this statement, or in the assignment of Muir’s note,- to indicate that this note was taken specially in lieu of the note of Haskins to Hill. And although Laprade says that this was particularly mentioned by Cross, and as he understood agreed otí by the parties, yet as Haskins has no recollection of it, the inference is, that although it may have been mentioned by Cross/it was not in such terms as to attract the attention of Haskins or to prove any mutual understanding, or to indicate more than the' opinion or belief of Cross that in surrendering the one note and receiving the other, both being for the price of the same land, he retained his lien, or he may have declared this to be his intention. It is not intimated either in the pleadings or evidence that any thing was said on that occasion about the note for $900, or the price of the tract which Cross' had sold to Haskins, or any lien therefor.
Thé decree 6f the Gircuit Court
The Court having ascertained the cash value of the note for $1095 to be $985, decreed, in substance, that the land conveyed to Muir was subject to the payment of the note remaining- in the hands of Hill’s administrator with its interest, and refusing any credit to Muir on that account,- remitted Cross to his remedy at law upon Muir’s note for $1250.-
The decree thus, in effect, subjects Muir to the payment of about $2250 of the debts of Haskins for the land when his debt to Haskins for the same land amounted only to $1250, and when the two notes of Haskins to Hill reduced to their cash value and credited by the payments made on one of them in the hands of Cross, amounted to less than $1800. This can only be justified upon the principle that the land in Muir’s hands was subject not only to the lien for the note retained by *281 Hill’s administrator, but that it was subject also (or that Muir was liable) for the amount due on the note which Haskins had assigned to ¡Gross, and that Cross still had a lien on the smaller tract for a portion of -the price equal to the difference between the amount of the two notes of Haskins to Iiill and the amount for which Muir is held liable by the decree. It is only upon these grounds that after subjecting the land to the payment of the note held by Hill’s administrator, Muir can be liable for the full amount of his note to Haskins.
Notes given for the purchase -of' laud remain a lien upon the land though they risay be renewed.
With regard to the lien in favor of Hill’s administra-, tor, who retains the original note for part of the price , of the land, there is, and can be, no dispute. Nor is there any ground for maintaining that Muir lost or that-'Cross acquired any advantage or equity by reason of the,conversations between them .before the note of the latter was assigned. On the contrary the fact that Cross was told by Muir before the assignment that there would be a difficulty, which certainly might have re-, leased him from any obligation to take the note from Haskins, and his failure to make known any claim of lien on his own part, tend not only to rebut any equity growing out of the conversations between him and Muir, but in fact to increase the equity of Muir against any. claim of lien by Cross. Nor should we deem it material even if it clearly appeared that in the settlement between Cross and Haskins, it had been expressly agreed between them that Cross should retain the lien which he unquestionably had while he held the note of Haskins to Hill. As Haskins had no right to any lien except such as might attach to his note on Muir, such, an agreement would amount to nothing more than a declaration by Cross that he intended to retain his lien.
The question on this part of the case, in the most favorable shape for Cross, is whether by surrendering his note on Haskins, to which the lien attached, and taking the note of a third person, even if it had been of the same amount and blended with no other transaction, he would not have waived or lost his original lien, and *282 placed himself precisely in the condition of the assignor from whom he received the new note. Suppose that Haskins, instead of assigning the note of Muir, a purchaser of the land which was in lien, had assigned the note of a stranger, receiving for it his own note, to the prior vendor, which had been assigned to Cross, we think it perfectly obvious that the original lien attaching to the surrendered note, would have been extinguished by the surrender of that note, and that Cross, as assignee of the new note, would not only have held it subject to all the equities which the obligor had against the assignor, but could have asserted no lien or equity against the land, but such as his assignor might have asserted, and would in the assertion of any such lien or equity have been subject to any counter equity of Muir against Haskins, and especially to such as was incident to their relation as vendor and vendee. When the payee of a note surrenders it to the payer, taking his note for the amount due at a future day, this is a renewal of the note and a continuation of the same debt, and has been properly regarded as not affecting an ex-tinguishment of the lien pertaining to that debt.
But where the given for land andentahes the assfgneVto^im by athirdperson, it is no renewal and the lien is debtT^imif "the signee5" against assignor is the only remedy in case of the inobligor^ °£ 1'16
But when the payee or his assignee surrenders the subsisting note and takes another not executed by the original payer, but payable to him by a stranger and assigned by him to his creditor, this is no renewal or continuation of the original debt, but an extinguishment of it. And whatever might be the case, if the payee . , ° J ol the original note, thus taking by assignment, the note °f a third person were himself the vendor having indePendently of the note a lien for the debt as part of the price of land, as to which we need not decide; we think j - , , _ the necessary consequence of such a change of the • debt by the assignee of the note for the price, is to extinguish the lien which he holds, merely as assignee of the original debt, and to merge all of his previous claims and rights as assignee of the original note or debt in such as belong to his new attitude as assignee of the new debt upon a stranger. The debts are not the same. In giving up the first and taking the other. *283 he surrenders his rights as assignee of the original debt and assumes others as assignee of a different debt. If his new debtor should become insolvent, or should set up an equity against the demand which destroys its value, this may give him a ground of recohrce against his assignor, but does not restore him to his original debt or to the rights pertaining to it, and therefore does not resuscitate any right or remedy which, as holder of the original debt, he might once have had against third persons.
We think the case, as it occurred, is substantially the same in principle, and is not affected by the fact that the note assigned in lieu of the original debt, was given for the price of the same land on which the original lien existed. The original debt was extinguished, and with it, the original lien. And Cross putting himself voluntarily in the place of the assignor of the new debt, has no other lien or equity against the new debt- or, than his assignor had and becomes subject like other assignees to any equity of the obligor against the payee affecting the consideration of the note, or existing before notice of the assignment. The note of Muir, assigned by Haskins to Cross, had no lien on the land, except on condition of the removal of the prior lien, without injury to Muir. His liability to injury by the prior lien, gave him an equity against Haskins to withhold payment until the prior lien was removed, or to have a credit on the note for any payment on the land, he might be compelled to pay on account of the prior lien; and as he was under no liability to Haskins beyond the amount of his note, upon paying subsisting prior liens to that amount, his note would be discharged in equity. As assignee of that note, therefore, Cross could claim only the balance remaining due after crediting the amount paid by Muir in discharge of subsisting previous liens; as assignee of Hill, he could claim nothing of Muir, because Muir had never been directly indebted to Hill, and Cross had ceased to be the assignee of the original debt, and neither Muir nor the land was subject to the original lien, because the debt *284 to which it was incident was satisfied and the lien extinguished.
Where a note due for land sold has been united wit^offie^deah vendor amfveni dee, so as to ten-ascertain the for the land, and Heldn°that°nthe ciaim of • lien should he rejected. ..
Then as to the note or debt of $900’ for the price of sold’by Cross to Haskins, we are satisfied that J after two settlements, including this note and blending it with other transactions, in the manner above stated, whereby its identity was wholly lost, and no means left for tracing it, and after such a lapse of time from its date and maturity, as in connection with its surrender, authorized' the inference that it was satisfied; and hi ^ aHseilce °f an7 direct, assertion of a lien on that account, and of any attempt by pleading or evidence to . ,-.r , J a . , show what, it any thing, was due upon it, or how it was disposed of in the first settlement, in which alone it was specifically noticed, it cannot be indirectly allowed for any purpose, so as to affect a third person, who might well presume its discharge, and to whom it was not mentioned, by Cross, when it might and should have been, if intended to be asserted as a subsisting In fact there are no means, so far as we can per^ceive, of identifying the surrender, if any; and if there $ere, we are not prepared to admit that it could be Enforced as an operative lien against a stranger, after having been not only blended, but merged in' other larger notes and transactions, and without discrimination as this has been. .. '
The case of Honore vs Bakewell, (6 B. Monroe,) furnishes no authority for continuing or resuscitating a lien in either of these cases.' And to do so, in the lattei* case especially, would subject subsequent purchasers to a hazard, against which no reasonable diligence could protect thém, and which is not required by any just regard for the interest of the prior vendor.'
•. The fact that Muir would: be in no worse condition if he were compelled to pay the amount of the two last, 'notes; notes of Haskins to Hill, than if the assignee of one of these notes had not surrendered it to Haskins, furnishes no reason why Muir should not insist apon the legal effect of the surrender to avoid a loss , which the law would have thrown upon him, if the note had not *285 been surrendred, and no ground for refusing to him the advantage which has thus accrued, without any impropriety on his part, from the voluntary act of the party Bolding the adverse interest. And although it be true that the inability of Cross to collect the assigned note' on Muir, by reason of the equity of Muir against the assignor,' Haskins,’might,' as between him and Haskins, entitle him to a rescisión of the contract and to be restored to his former rights, yet he could not be restored to his former lien, because being extinguished by the first transaction, it cannot be resuscitated, or if it could be, there is no reason why in this contest for avoiding a loss, either party should be favored, by relieving him at the expense of the other from a disadvantage' which he has voluntarily and unnecessarily brought upon hinA self, Cross is entitled to no peculiar favor' as against Muir. And as Haskins has no equity against Muir, whereby to subject him to the payment of any thing beyond his note for $1250, Cross can derive no'such equity from him. The precise period when Haskins came insolvent doés not appear. He was, dur part of these transactions,' regarded as entirely so and was doubtless consideredj by both Cross and both able and willing to meet any responsibility/ might devolve upon him. Muir doubtless truslfed his integrity and ability in making payments for\$he land without ascertaining, as he might have done, subjection to a lien; and he would have suffered from, the consequences of his subsequent insolvency and his own want of vigilance,' if Cross; confiding either in Haskins or in his own judgment, had not by surrendering his lien relieved Muir and subjected himself to the loss.
The result of these views is that Muir is not bound to pay ány thing beyond the amount of his note to' Haskins; that upon his cross-bill he is entitled to a credit upon that note for the amount of the debt of Haskins to Hill’s administrator, for which a lien on the land is decreed, and that Cross should be allowed to enforce against him the residue only of the note assigned to *286 him by Haskins. There is no question on the decree as between Cross and Plaskins.
Morehead fy Reed and Underwood for plaintiff; E. M. Ewing for defendants.
Wherefore, the decree is reversed, and the cause remanded for a decree in conformity with this opinion.