## JAS. HARLAN'S ADMR. v. ORLANDO BROWN.

**Specific Performance of Executory Contract to Convey Land.**

> In general it may be stated that to entitle a party to a specific performance he must show that he has been in no default in not performing the agreement, and that he has taken all proper steps toward the performance on his own part.

**Same — Coercion of Title.**

> Where a purchaser or his privies seek to coerce the title a payment of the purchase price must be averred and proven if denied.

**Same — Grantee Giving Note in Bank with Grantor as Indorser Did Not Discharge Vendor's Lien.**

> Before the vendor can be made to surrender his title it must appear that he has been paid, or that by his own act the lien has been discharged. The giving a note in bank with him as indorser and getting the proceeds by the grantor did not discharge the lien; it was not a payment until the note in bank was discharged, or grantor released from liability thereon.

**Same — Original Evidence of Debt.**

> In this case no conveyance has been made, the grantor has given no credit, nor changed the original evidence of the indebtedness.

APPEAL FROM FRANKLIN CIRCUIT COURT.

October 2, 1866.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Brown sold to Harlan a house and lot in Frankfort, April 1, 1844, at $5,500, to be paid at five years' date, to bear interest from date, to be paid yearly, a deed of conveyance to be made on the payment of the purchase price.

Numerous payments were made by Harlan, when Batchelor, then a clerk and bookkeeper in the Farmers' Bank, was requested to state the account and strike the balance from data furnished by Harlan, which he did, showing the remainder due September 1, 1859, to be $3,246.80. Twelve days thereafter Harlan made his note, with Brown as his only surety, to the Farmers' Bank for $2,993.75, which the bank discounted, and Harlan gave Brown a check for the proceeds, $2,933.90.

June 7, 1860, Harlan wrote a note to Brown in response to a request to raise some money for him, in which he says, " I have made no calculation of the balance due you lately; my recollection is between $200 and $300."

Harlan died in 1863, the title never having been conveyed. His administrator filed this bill suggesting a deficiency of assets to pay his debts, as he had become largely indebted as surety for parties who had proved insolvent, make his widow and heirs and creditors and said Brown parties, alleged that decedent had paid Brown for the house and lot, and that he be compelled to convey. Brown answered, denying the payment of the purchase price, set out that he had gone Harlan's surety in the note to the Farmers' Bank for $2,993.75, had gotten the proceeds but it was not received as a payment, no credit therefor was entered, and being bound himself for the return of the money to the bank he held the title as security, that Harlan had renewed said debt with him still as surety until his death, and $2,400 of the principal still remained due the bank; by a subsequent amendment he exhibits Harlan's letter of June 7, 1860, and asserts that a balance of over $300 remains still due him when the bank debt is paid; he asks that a prior lien be adjudged him for the amount of the bank debt and this remainder, and makes his answer a cross-petition against the administrator, who replied and protested against any judgment in Brown's favor.

The court adjudged that a final settlement was had, and that the amount of the proceeds of the note to the Farmers' Bank was the sum due from Harlan, and that Brown still held the title as surety for the payment of this bank debt, but as the bank was no party to Brown's pleadings the submission was set aside with leave to amend; subsequently at the request of both parties a final judgment was pronounced upon the pleadings without amendment, when the court dismissed the suit against Brown so far as it sought the title and dismissed his cross-petition so far as it sought

a judgment over for any balance due him and affirmed the previous interlocutory judgment; all 'these dismissals were, however, without prejudice, and from which both parties have appealed.

There are two main questions in the case.    1. Is there any remainder over and above the bank debt due on the purchase price? 2. Has Brown's lien been discharged or displaced by his reception of the proceeds of the bank debt?    Or does he still hold the title for its payment?

It is most evident from Batchelor's statement that there was due Brown, September 1, 1859, after allowing all the credits claimed by Harlan, $3,246.80, which would leave due to Brown, $312.90, after deducting $2,933.90, the proceeds of the bank debt, and Harlan doubtless referred to this balance in his letter of June 7, 1860.

The court, therefore, erred in not allowing Brown this $312.90, with annual interest from September 1, 1859.

There might be various reasons why the bank note was made for *odd* dollars and cents, and though, in the absence of all proof, this might raise the presumption that it was made for such exact sum that its proceeds would be equivalent to the balance due, yet certainly this is not sufficient to overbalance a deliberately stated account showing the debts and credits with the balance stated, and subsequent acknowledgment of a still outstanding remainder due, especially when one of the alternate amounts, so acknowledged, so nearly corresponds with the balance as shown by this stated account, and this too made from dates furnished by Harlan.

The value of Mrs. Harlan's dower interest will be greatly enhanced by the displacement of Brown's lien, as to the bank debt, and the other creditors *pro rata* increased also, all, however, to the injury of Brown, as Harlan's estate is largely insolvent.    Brown, therefore, must *lose* whatever his estate cannot pay of this bank debt, unless he be allowed a prior lien.

There is no direct proof of any special understanding between Brown and Harlan as to whether the former was to retain the title until the bank debt was paid, but we are left to determine as to this from the circumstances.

The indulgence of more than ten years after the purchase price had become due, before this note in bank was given, evidences the very kind and intimate personal relations which must have existed between the parties, and all the correspondence attests the same,

as well as that Harlan was then hard run and perhaps embarrassed. Brown's necessities, together with his long forbearance, and the loose state of the accounts seem to have made Harlan anxious to get a proper statement of his indebtedness, and to arrange the remainder to suit Brown's condition.

Having ascertained this remainder, doubtless the expedient of a borrow from the bank was the most convenient, if, indeed, not the only available means of raising the money.

The still permitting the title to remain in Brown and so continuing although Harlan lived for about four years afterward is a significant fact. It may be said the remaining $300 and odd dollars still due upon the purchase price was a sufficient reason for Harlan's not asking or for Brown's not conveying the title, but if Brown was willing to indorse for Harlan to the amount of near $3,000 and not retain a lien therefor how much less would he retain the title to secure only $300.

Brown still held Harlan's obligation for the purchase price; this was neither surrendered nor credited; if Brown was not to retain the lien until this bank debt was made a deed would most likely have been made even if a lien for the 300 odd dollars of the remaining purchase money not paid by the proceeds of the bank debt had been reserved therein, especially when the parties had so nearly settled this transaction of more than fifteen years' standing.

Had this note been made payable to the order of Brown instead of the bank, though he might have indorsed it to the bank and gotten its proceeds, this would not have extinguished his lien, as it would not in reality have been a payment until the note should be fully discharged. Brown was the sole indorser, and his liability to the bank was precisely the same as if the note had been payable to him and he had indorsed it, and Harlan's liability was likewise precisely the same.

As the legal responsibilities of both Brown and Harlan were precisely the same to the bank, what principle of equity will relieve Harlan from a responsibility on the mere form of the note and deprive Brown of so important a right?

Brown being the sole indorser, together with the retention of the title, and not giving credit for the proceeds of the bank debt, are strong indications that he was still to retain the lien.

Had Brown given to Harlan a memorandum to the effect that he had indorsed for him in bank that the proceeds of note had been paid to Brown and that when the note in bank was fully

paid or Brown discharged from liability thereon it should be regarded as a payment on the house and lot, could there have been any doubt as to Brown's lien still continuing? Yet do not the evidence and circumstances clearly indicate this, and are not Brown's rights precisely the same as if he had given such a memorandum?

Had Brown not gone Harlan's surety, and Harlan had not paid him, as he would not have done, at least with the proceeds of a note for which Brown was still liable, his original lien would still exist, and be superior to either the dower right of the widow or the claims of the other creditors. Harlan's means have been reduced nothing because of the payment of the proceeds of this bank debt only so far as he reduced it; then by allowing a prior lien for its amount now due, will still leave the widow and the other creditors in precisely as good condition as if this bank debt had never been credited, and at the same time will not deprive Brown of his equitable lien.

If Brown is not allowed this lien he does not get the price for which he sold the house and lot by the exact difference between the amount of this bank debt and the amount Harlan's estate can pay on it, and thus his original purchase price will be reduced, not by a real payment, but by the action of the law and its courts.

By allowing Brown a prior lien exact and substantial justice will be done all parties, according to the original contract and intention of the parties; by refusing the widow and other creditors are benefited at Brown's expense.

In 2 Story's Equity Jurisprudence, 585, section 1224, it is said:

> "Generally speaking, the lien of the vendor exists, and *the burden of proof is on the purchaser to establish* that, in the particular case, *it has been intentionally displaced or waived* by the consent of the parties. If, under all the circumstances, *it remains in doubt, then the lien attaches.*"

And in section 1225 Story says:

> "If, upon the face of the conveyance, the consideration is expressed to be paid, and even a receipt therefor is indorsed upon the back of it, and yet, *in point of fact, the purchase money has not been paid, the lien is not gone;* it attaches against the vendee and persons claiming as volunteers, or with notice under him."

It is true that our statute has innovated upon these equitable rules so far, *but only so far,* as that when the legal title is conveyed the unpaid purchase price must be stated in order to retain a lien against an innocent purchaser and creditors, but does not destroy the equitable lien as between the parties. Neal et al. *v.* Davis, 17 B. Mon. 143.

Again, this suit seeks, substantially, a specific performance of the contract.

In section 771, page 89, Story says:

> " In general it may be stated that to entitle a party to a specific performance, he must show that he has been in no default in not performing the agreement, and that he has taken all proper steps toward the performance on his own part."

When a purchaser or his privies seek to coerce a title, payment of the purchase price must be averred and proved if denied; the payment is here denied; if the evidence and circumstances, therefore, stood in equipoise, the lien should be allowed. In Honore's Exr. *v.* Bakewell, 6 B. Mon. 67, this court held that where Honore had sold to Bell certain premises, conveyed by deed specifying the payments to be made, and Bell, the grantee, had afterward sold and conveyed a portion of the premises to Bakewell, with the right of Bakewell to pay the purchase price to Honore and have Bell relieved; Bakewell afterward executed his notes to Honore and procured Bell's release to the same amount, and subsequently having mortgaged the premises to Hites, and becoming insolvent, a question whether Honore held a lien prior to the mortgagee's was presented, and this court held that the release of Bell by Honore was the release of Honore's lien as to Bell, but that as Bell had a lien as against Bakewell the acceptance of Bakewell's notes in payment of Bell's notes transferred his lien on Bakewell to Honore.

Here it was expressly agreed that Bell should be released, and, of course, the lien as to him must also be released, but as Bell's lien on Bakewell was not actually paid by the execution of the notes by Bakewell to Honore, this court held that the lien was not canceled, and decreed Honore's execution a superior lien to the mortgagee's. This is a very strong case requiring either actual payment, or an express agreement to displace or cancel a vendor's lien — much stronger than the one now under considera-

tion.  In that case the title was conveyed with a statement as to
the outstanding payments.  Bakewell, by the consent of Honore,
had changed the character of the evidences of payments as de-
scribed in Bell's deed to Bakewell, yet this court held that had
Bakewell made his notes to Bell, and he had assigned them to
Honore, there would have been a lien, and had these assigned
notes been renewed by Bakewell to Honore, that though this would
have released Bell as assignor, it would not have released Honore's
lien acquired from Bell.  In Zephaniah Williams *v.* Gorham and
Swigert, MSS. opinion, July, 1830, this court held that as Swigert
held the title to the lot belonging to Gorham when he went Gor-
ham's surety, who was insolvent, that this was an indemnity to
the extent that the purchase money had been paid and that an
attaching creditor who comes into equity on the sole ground of
Gorham's insolvency had no right to take out of Swigert's hands
this indemnity.  If the bare possession of title at the time of
going surety could create a lien, though the party be insolvent,
how much clearer is the lien of the vendor who retains the title
for the payment of the purchase money, and who afterward
enables his vendee to raise a part of the money by indorsing for
him, but still retains the title and gives no credit for the money
so received, and acknowledges payment only so far as the debt in
which he is surety is actually paid and he released.

Before Brown can be made to surrender his title, it must ap-
pear that he has been paid or that by his own act the lien has been
released; the giving a note in bank with him as indorser and
getting the proceeds by Brown did not necessarily discharge or
displace his lien; it was not in fact a payment until the note in
bank was discharged or Brown released from liability thereon.
Nor does Harlan's note to Brown of June 7, 1860, necessarily
imply that all the purchase price has been paid but the $200 or
$300 mentioned therein; this note was in answer to a request for
further payment by Brown.  Harlan knew he had no right to
request the money due the bank, therefore the allusion was to the
remainder due beside the bank debt, and, in this light, is not even
an indication that Harlan was referring to the lien or meant to
assert that all the purchase price, but the amount named, had
been paid, but meant what it says, that there was due to Brown
only the amount named, not that a large amount was not still due
the bank.  Brown's stronger equity stands upon his original lien,

as it has never been discharged or released. Still, under the authority of the last-recited case, it might well be predicated upon his suretyship. Brown, and not the bank, holds the lien; it was, therefore, an essential party to his cross-petition. It is true that the court should see a sufficiency of the proceeds of the house and lot applied to the discharge of this debt; as the bank is already a party to the administrator's suit this can be done without its being a party to Brown's cross-suit; as Harlan's estate is liable for this bank debt his administrators have an interest in its discharge which the court should protect.

An examination of the cases referred to by the counsel for Harlan's administrator and widow show that they do not apply to this case. Francis v. Hazelrigg's Exrs., Hardin, 48, 49, involved the question whether if a vendor should take personal security he did not, by that act, destroy the presumption of lien in favor of a vendor, and it was so held.

In the case of Calcord v. Seamons, 6 B. Mon. 265, Calcord sold and *conveyed* to Hedges a tract of land. Calcord owed Seamons $533.09 and paid it by getting Hedges to execute his note to Seamonds and thereupon Calcord *credited Hedges' note to him with the amount.*

Hedges still owing Calcord about $15,000 resold the land to Calcord who again sold it to Seamonds for $9,000, who claimed he had a lien on the land for Hedges' note to him and wanted to deduct it out of the purchase price of $9,000 to Calcord. But here the vendor *had given a credit to his vendee* and thereby released his lien, and Seamonds, when he took the note to Hedges, did not provide for any continuing lien, and as Calcord had already *conveyed the legal title* to Hedges, it may well be doubted whether Seamons could have done so.

In Muir v. Cross, etc., 10 B. Mon. 277, Hill *conveyed* a tract of land to Haskins, reciting the consideration of four notes of $1,095 each, payable quarterly. Cross *conveyed* another tract to Haskins for his note of $900.

Haskins sold and *conveyed* to Muir both tracts for the recited consideration of $3,050 paid. Muir, however, gave to Haskins his note for $1,350.

After Hill's sale to Haskins and Cross' sale to Haskins, and before Haskins' sale to Muir Hill gave Cross a mortgage on slaves and personalty, including the two last notes of Haskins to Hill.

Hill having died, his administrator and Cross had a settlement, after the conveyance to Muir, in which the last mortgage notes became Cross' property, and the first was retained by the administrator. Cross and Haskins also had a settlement in which Cross surrendered to Haskins said note and took from him Muir's note, and received Haskins' note to himself for the balance due between them.

Hill's administrator then sought to hold a lien for the Haskins note received from Cross against Muir, Haskins' vendee. Muir resisted this, and also insisted that if it was allowed he should have a credit on the note executed by him to Haskins which was then held by Cross.

Two settlements had occurred between Cross and Haskins, in which the note originally given by Haskins to Cross for the land purchased was settled, and a balance of $1,500 against Haskins for which he executed his note on the first settlement; subsequently in another settlement this $1,500 note, and a note for $1,095, given by Haskins to Hill, is charged to Haskins and he credited by Muir's note to him for $1,250.

This court held that Hill's administrator still held a lien for the note of Haskins which had been mortgaged to Cross, but which he had gotten back from Cross, but that as to the other note which had been settled between Cross and Haskins, no lien survived after said settlement, and that Muir had an equity to have a sufficiency of his indebtedness to Haskins appropriated to the extinguishment of the prior lien of Hill's administrator on the Haskins note, notwithstanding his note had been assigned to Cross.

Various items not connected with the land notes had been considered in these settlements between Cross and Haskins, and it was impossible for the court to distinguish how much or how little of the land debts had really been paid, and as the written evidence of the debts had been surrendered and other notes taken which changed the evidences and the title had been conveyed, the court held that no lien as to these survived the settlements.

In the case of McClure, etc. v. Harris, 12 B. Mon. 261, Harris having purchased of Halman 214 acres of land for which the latter held the title bond of Petty, the latter by agreement of all parties *conveyed* the land to Harris, who undertook to pay him $190 and $1,810 to McClure & McBrayer, being the $2,000 agreed to be paid by Harris to Halman, as the consideration for

the land, and to secure these debts Harris executed a mortgage on this 214 acres so conveyed to him, also on 160 acres which he previously owned.

Harris having died, his widow claimed dower and that her equity was superior to the mortgage debts; to defeat this the creditors asserted that their debts being for the original purchase price had a superior lien to the widow's claim of dower. The court held as the husband had obtained the legal title, and as the notes were not given to his original vendor but to his vendor's creditors who obtained an additional security by the mortgage on both tracts of land that this repelled the inference that they depended on the vendor's lien and that they held under the mortgage and subordinate to the widow.

This rather lengthy analysis of these cases has been made to show that no principle was involved or could have been adjudicated which is now applied or involved between these parties.

In this case no conveyance has been made by the vendor, he has given no credit, nor changed the original evidence of indebtedness, the vendee's administrators plead a payment and discharge of the lien, and we are to adjudicate on the fact whether this be so.

This court is unanimous that Brown should be allowed the $312.90, the remainder of the purchase price over and above the amount of the proceeds of the bank debt, together with annual interest from September 1, 1859, and that the judgment should be reversed with directions to allow this.

But as to Brown's claim setting up a prior lien for the amount of the bank debt yet unpaid the court is equally divided, the chief justice and Judge Williams holding that such lien should be allowed, and Judge Robertson and Judge Hardin contra, that the reception of the proceeds of the bank debt was a payment to Brown and a discharge pro tanto of his lien; this equal division of the court affirms the judgment below as to this matter.

The court unanimously affirms the refusal of the court to compel Brown to convey the title to Harlan's heirs, as this should not be done until the purchase price is entirely discharged.

Wherefore, the judgment is reversed as to Brown, with directions to allow him the remainder of the purchase money, and it is affirmed by a divided court so far as it allowed a prior lien for the bank debt, and as to Harlan's administrator, etc., the judgment is affirmed by a unanimous court.