## Lyons v. Gambill et al.

(Decided March 8, 1932.)

C. F. SEE, JR., for appellant.

.W. D. O'NEAL for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On October 3, 1922, J. L. Hewlett, who owned a large farm in Lawrence county, and the other parties mentioned therein, entered into the following agreement:

"Blaine, Ky., Oct. 3, 1922.

"Article of Agreement, made and entered into by and between J. L. Hewlett, G. W. Kouns, H. H. Gambill, E. C. Berry, G. V. Burton, H. C. Osborn and C. F. Osborn.

"Whereby the parties become the Blaine Gas Company, with H. C. Osborn trustee.

"Now the parties who are to be hereafter known as the Blaine Gas Company, are to take over 6/7 of the Gas well belonging to J. L. Hewlett, and run a two inch pipeline from the well to Blaine town and connect the gas to the homes of the parties named herein, this line is to be run without expense to J. L. Hewlett, save he is to furnish all the 2″ and 1¼″ pipe which he has free to the Company this 1¼″ pipe to be used in connecting up homes with the main line. After the line is lain and the gas is tested and it is found that there is sufficient gas to run the homes of the parties referred to herein; then

the parties are to pay J. L. Hewlett, the sum of $700.00, but should there not be sufficient gas for this purpose then the parties have the right to take up the line and will owe Hewlett, nothing. Should there be sufficient gas then each of the parties is to have to the amount of eight hundred feet of gas per day free, each party is to furnish a Meter between the main line and his home which meter is to be read on the first Jan. 1st July of each year by the trustee or some one appointed by him, each party to pay at the rate of 32c per thousand feet for all gas used in excess of 144 thousand feet per 6 months, it being understood that the said Hewlett, does not have to put in a meter at his home and that he is to have his proportionate part of all money collected for gas used by the parties hereto in excess of the amount stipulated herein, also should it be found that there is sufficient gas for commercial purposes after the line is completed and each of the parties hereto are furnished with sufficient gas to run their homes and places of business then the gas is to be sold to any outsider to whom the Trustee, may desire to sell to at the rate of 40c per thousand feet and all gas so sold shall be paid for on the first of each month by the parties to whom gas is sold to the Trustee of the Blaine Gas Co.

"Now it is understood and agreed that said J. L. Hewlett, is to reserve five hundred feet around said gas well from any future oil and gas lease upon said land.

"It is further agreed that the Blaine Gas Co. are to have the privilege of drilling another well on said reserve of five hundred feet around said well this drilling to be free of expense to the said Hewlett, and provided oil or gas is found in this said well in paying quantities the well is to be operated by said company and the said Hewlett, is to have the equal one seventh part delivered free to him into the pipe line to which the Blaine Gas Co. may connect their well.

"It is also understood and agreed that the said Hewlett is to have gas free from the well for the use of any of his immediate family who may desire to build or live on the farm from which this gas is produced."

On February 14, 1923, J. L. Hewlett and wife conveyed to G. W. Kouns, E. C. Berry, H. H. Gambill, C. F. Osborn, H. C. Osborn, and G. V. Burton the following property:

"Six sevenths of the gas well on our farm, (this being the well drilled by the Ohio Oil Co.) with a reserve of five hundred feet around said well, which reserve is to operate as a protection to the well referred to herein also for the purpose of drilling a future well on said reserve in accordance with a contract between the parties hereto dated Oct. 3, 1922, said contract being made a part of this transfer and attached hereto."

The deed and contract were not recorded until December 1, 1930, and the contract, not being properly witnessed or acknowlegded was not a recordable instrument.

Between the date of the written contract and the date of the deed the purchasers of the well laid lines, and ever since have been in possession of the well and used the gas therefrom.

In 1926, J. L. Hewlett and wife conveyed a portion of his farm, but not that part on which the well was located, to his son, W. H. Hewlett, and his wife, Julia Hewlett, by deed duly recorded and containing the following clause:

"The said first party also transfers to the second party free gas and water from the farm which they now own for the use in one dwelling house with ingress and egress to lay and maintain pipe lines for said gas and water over the lands of the first party. This transfer is conditioned by a contract now existing between J. L. Hewlett and the Blaine Gas Company."

After making the foregoing conveyance, J. L. Hewlett and wife conveyed the remainder of the farm, together with the gas rights to Procter Fyffe.

After the conveyance by J. L. Hewlett to Procter Fyffe, W. H. Hewlett and wife conveyed the land which they had acquired from J. L. Hewlett to F. L. Lyons by deed dated May 3, 1930, and recorded in the Lawrence county court clerk's office on May 5, 1930. The deed contained the following clause:

"The said first parties also transfer their right to free gas and water from the farm of J. L. Hew-

lett, now owned by Procter Fyffe, for the use of one dwelling house with ingress and egress to maintain a pipe line for gas and water over the lands of J. L. Hewlett, now owned by Procter Fyffe."

The present owners of the gas well are Procter Fyffe, who purchased from J. L. Hewlett, H. H. Gambill, Raymond Russell Boggs, Bank of Blaine, Wm. Thompson, G. V. Burton, and J. L. Hewlett, who purchased the interest of E. C. Berry, one of the original purchasers.

After his purchase from W. H. Hewlett and wife, F. L. Lyons built a dwelling house on the land, and put in gas equipment. He then laid a pipe line and connected it with the lines of the Blaine Gas Company, which afterward disconnected his line and notified him that he could not use the gas.

This action was brought by Lyons against H. H. Gambill and others, doing business in the name of Blaine Gas Company, to enjoin them from interfering with his use of the gas from the well. On final hearing the injunction was denied, and the petition dismissed. Lyons appeals.

Neither the deed nor the contract of sale to appellees or their predecessors in title was recorded at the time of appellant's purchase from W. H. Hewlett and wife, and appellant insists that he was a bona fide purchaser for value without notice. If this were all that the record showed, there might be merit in the contention, but the record goes much further. In the first place the deed from J. L. Hewlett and wife to W. H. Hewlett and wife disclosed on its face that the transfer of the gas right was conditioned by the contract between J. L. Hewlett and the Blaine Gas Company. In the next place appellant purchased with knowledge of the fact that appellees were in actual possession of the gas well, and were using the gas therefrom. In the third place he was informed by J. L. Hewlett before his purchase that he could not get free gas from the well. Thus by the deed in his grantor's title, by the possession of the gas well by appellees, and by the information furnished him by J. L. Hewlett, he was charged with notice of what a proper inquiry would have disclosed. Johnson v. Gwathmey, 4 Litt. 317, 14 Am. Dec. 135; Honore's Ex'r v. Bakewell, 6 B. Mon. 67, 43 Am. Dec. 147; B. P. Jones &

Co. v. Cash, 190 Ky. 96, 226 S. W. 352. After such notice appellant confined his investigation to the record, and, finding nothing of record showing title in appellees, made the purchase. Clearly he did not go as far as an ordinarily prudent person in his situation should have gone. In view of the facts charging him with notice, and of the facts within his knowledge, it was his duty to inquire as to the terms of the contract under which appellees or their predecessors in title were operating the well. As proper inquiry before his purchase would have revealed the terms of that contract, he is charged with knowledge thereof, and does not occupy the position of a bona fide purchaser for value without notice.

By the contract J. L. Hewlett sold to the other parties to the agreement a six-sevenths interest in the gas well. The amount paid therefor was $700. For this they were to have free 800 feet of gas per day, but for all gas used in excess of 144,000 feet each six months each party was to pay at the rate of 32 cents per thousand feet. Under the contract Hewlett retained a one-seventh interest, and was entitled to his proportionate part of all money for gas used by the parties in excess of the amount stipulated in the contract. Each one-seventh transferred, as well as the one-seventh retained by J. L. Hewlett, was an entirety, and it was never intended by the parties that any one-seventh should be subdivided and sold off in parts to different persons. Furthermore the one-seventh retained by J. L. Hewlett was incidental to the ownership of the land, and passed to Procter Fyffe on his purchase of the land. The one-seventh which J. L. Hewlett now has is not the one-seventh retained by him, but the one-seventh which he purchased from E. C. Berry. However, the contract does contain the following provision: "It is also understood and agreed that the said Hewlett is to have gas free from the well for the use of any of his immediate family who may desire to build or live on the farm from which this gas is produced." It is under this provision and none other that J. L. Hewlett conveyed the right of free gas to his son and daughter-in-law, W. H. Hewlett and Julia Hewlett, who purchased a portion of the farm. In short, it was a personal right which they as members of J. L. Hewlett's family could exercise so long as they continued to live on the farm, and not a right which could be transferred to appellant or any other stranger. It follows that appellant did not acquire the right to free gas by

the conveyance from W. H. Hewlett and wife, and that J. L. Hewlett made no mistake when he informed appellant prior to his purchase that he could not get free gas. In the circumstances the chancellor did not err in refusing the injunction.

Judgment affirmed.