# Hoskins v. Hoskins' Trustee in Bankruptcy.

# Hoskins' Trustee in Bankruptcy v. Hoskins.

(Decided December 11, 1931.)

WILLIS STATON for Viola H. and Anna Hoskins.

J. J. MOORE for G. W. Hoskins' trustee in bankruptcy.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

In its final analysis, this case involves a controversy between the widow and creditors of H. M. Hoskins and between the wife and creditors of G. W. Hoskins.

H. M. Hoskins and G. W. Hoskins were brothers engaged in business in Pikeville, Ky. They owned all, or substantially all, of the stock of the Eastern Kentucky Music Company, a corporation. The music company was indebted to the Pikeville National Bank and from time to time it executed its notes to the bank for the sums owed by it. H. M. Hoskins and G. W. Hoskins also signed these notes as principals.

On July 3, 1929, the Pikeville National Bank brought suit against the Eastern Kentucky Music Company, H. M. Hoskins, Viola Hoskins, his wife, G. W. Hoskins, and Anna Hoskins, his wife, in which it sought to recover on three notes aggregating $5,000, executed by the music company and the Hoskins brothers. It was alleged in the petition that on the —— day of March, 1927, when the indebtedness represented by the notes sued on was in existence, H. M. Hoskins executed and delivered a deed of conveyance to his wife, Viola Hoskins, for certain described real estate located in Pikeville, and that the deed was a gift from H. M. Hoskins to his wife, and that no consideration was paid by her. It was further alleged that on September 4, 1928, G. W. Hoskins executed and delivered to his wife, Anna Hoskins, a deed of conveyance for a 40 per cent undivided interest in two pieces of real estate in Pikeville and that this deed was a gift and without consideration. The bank sought to have these deeds canceled and a lien adjudged to it on the property therein described to satisfy its debts, interest, and cost. The allegations of the petition were sufficient to bring the case within the provisions of both section 1906 and section 1907, Kentucky Statutes.

Shortly thereafter the Eastern Kentucky Music Company, H. M. Hoskins, and G. W. Hoskins filed voluntary petitions in bankruptcy in the United States court for the Eastern district of Kentucky. The music company, H. M. Hoskins, and G. W. Hoskins were declared bankrupts, and F. H. Sharp was appointed trustee in bankruptcy for the creditors of each of the bankrupts. On November 11, 1929, F. H. Sharp, as trustee in bankruptcy of H. M. Hoskins and G. W. Hoskins, filed an intervening petition in the suit pending in the Pike circuit court in which he asked to be made a party and that he be permitted to prosecute the suit. The suit was thereafter prosecuted in the name of F. H. Sharp, trustee in bankruptcy, etc., as plaintiff.

On August 21, 1929, Viola Hoskins filed a suit against F. H. Sharp, trustee in bankruptcy, the Methodist Hospital of Kentucky, and H. M. Hoskins, in which she alleged that on August 20, 1927, she sold and conveyed to the Methodist Hospital of Kentucky certain real estate owned by her, part of the consideration being a house and lot located in Ashland, Boyd County, Ky., which was to be deeded to her by the Methodist Hospital but that through fraud, mistake, or oversight of the draftsman of the deed, or of H. M. Hoskins, her husband, the deed was made to H. M. Hoskins, and she prayed that the deed be reformed so that the title would be in her.

In the case in which F. H. Sharp, trustee in bankruptcy, was substituted as plaintiff for the Pikeville National Bank, Viola Hoskins and Anna Hoskins defended on the ground that the property which had been deeded to them by their respective husbands had been purchased with their money. On the final hearing the lower court refused to reform the deed to the Ashland property from the Methodist Hospital to H. M. Hoskins and canceled the deed to the Pikeville property from H. M. Hoskins to his wife, and Viola Hoskins has appealed.

Before the case was submitted, H. M. Hoskins died. The court ordered the property sold and $1,000 of the proceeds turned over to Viola Hoskins as the value of her homestead. From that part of the judgment the trustee in bankruptcy has prosecuted a cross-appeal. On that branch of the case involving the title to the property conveyed by G. W. Hoskins to his wife, Anna Hoskins, the court found in favor of Anna Hoskins and refused to cancel the deed, and the trustee in bankruptcy has appealed from that judgment. These appeals have been consolidated and will be disposed of in one opinion.

Beginning in 1912, H. M. Hoskins dealt more or less extensively in real estate in Pike county. He bought and sold several lots and until 1925 the title was always taken in his name except in one instance. On March 13, 1918, Margaret Clevenger conveyed to Viola Hoskins a lot for the cash consideration of $225. On January 31, 1919, this lot was conveyed by Viola Hoskins and H. M. Hoskins to G. W. Hoskins for $225. On August 10, 1925, R. S. Johnson and wife conveyed to H. M. Hoskins and Viola Hoskins a vacant lot on Cline street in Pikeville for $1,800. H. M. Hoskins paid the purchase money,

and erected on the lot a two-story dwelling at a cost to him of more than $5,000. On March 15, 1927, H. M. Hoskins conveyed this house and lot to his wife, Viola Hoskins. The consideration recited in the deed is ''$1.00 and love and affection.'' The deed purported to convey the entire lot, but Viola Hoskins then owned an undivided one-half interest in the lot. It is the undivided one-half interest conveyed to her by her husband by the deed dated March 15, 1927, that is here in controversy.

On May 11, 1921, the Pikeville General Hospital conveyed to H. M. Hoskins a lot in Pikeville for the consideration of $7,050. On February 18, 1925, H. M. Hoskins conveyed this property to his wife, Viola H. Hoskins, for the consideration of ''$1.00 and love and affection,'' and on August 20, 1927, H. M. Hoskins and Viola Hoskins conveyed it to the Methodist Hospital of Kentucky, the consideration being $4,200 cash, two notes executed by the purchaser for $1,500 each and conveyance by the purchaser of a house and lot in Ashland, Ky. The cash consideration was paid to H. M. Hoskins,. the notes were made payable to him, and the property in Ashland was deeded to him. The deed from the Methodist Hospital to H. M. Hoskins conveying the house and lot in Ashland is the deed which Viola Hoskins seeks to have reformed so that the title will be in her. It is her contention that she furnished the money to her husband from time to time and with the money so furnished by her he purchased real estate and took the title in his name, and that the money that had been furnished by her was the real consideration for the deed of March 15, 1927, by which her husband conveyed to her. an undivided one-half interest in the house and lot on Cline street. It is also her contention that the property in Ashland, Ky., was purchased with property which had been conveyed to her by her husband, and that the deed was made to her husband through fraud, mistake, or oversight. In her effort to show that her husband had purchased property with money furnished by her, she testified that her father had given her $500 and that she had turned it over to her husband. On July 31, 1912, J. H. Keathley conveyed to H. M. Hoskins a lot in Pikeville; the consideration recited in the deed was $300. Mrs. Hoskins claims, however, that the real consideration was a piano and an organ which belonged to her. She admits, however, that the piano and organ had been purchased and paid for by

her husband. H. M. Hoskins paid the taxes on all the real estate and paid for all improvements and repairs. Mrs. Hoskins had no bank account until about the time this litigation began, and she does not claim that there was any agreement between her and her husband whereby the title to the real estate purchased by him should be taken in her name, nor that there was any fraud or mistake where the title was taken in his name. except as to the deed to the property in Ashland.

Conceding for present purposes that Mrs. Hoskins furnished to her husband the money with which he paid for the various lots deeded to him prior to March 15, 1927, creditors whose debts were then in existence may not be prejudiced by any secret arrangement that existed between appellant and her husband. It is conclusively shown that appellant's husband was indebted to the Pikeville National Bank in the sum of $2,600 when he conveyed to her on March 15, 1927, an undivided one-half interest in the house and lot in Pikeville. It does not appear that this creditor had notice of any interest of appellant in this one-half interest in the property. No attack is being made on the undivided one-half interest conveyed to her by R. S. Johnson and wife in 1925. In the circumstances appellant's rights are inferior to those of her husband's creditors whose claims were in existence when her husband conveyed the property to her. Miller v. McLin, 147 Ky. 248, 143 S. W. 1008, 1009; Phillips v. Bowles, 209 Ky. 580, 273 S. W. 85; Wilson v. Newberry, 238 Ky. 635, 38 S. W. (2d) 695. We think, however, there was a total failure of proof tending to show that a valuable consideration, either past or present, passed from appellant to her husband for the property conveyed to her by him on March 15, 1927, which brings the case, so far as that property is concerned, squarely under section 1907, Kentucky Statutes, which provides that every gift, conveyance, assignment, transfer, or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities.

In answer to appellant's claim that the deed to the Ashland property should be reformed so that the title would be in her, it is sufficient to say that the evidence satisfactorily shows no mistake was made or fraud perpetrated when the deed from the Methodist Hospital of Kentucky to H. M. Hoskins was prepared and exe-

cuted. The property conveyed to the Methodist Hospital, for which the Ashland property was in part consideration, had been deeded to appellant by her husband, apparently without any consideration, and the transfer to her was nullified by the transaction with the Methodist Hospital. Without reciting the evidence, it is sufficient to say that it satisfactorily shows the transaction between her husband and the hospital was made with her knowledge and consent. From the beginning she permitted her husband to deal in real estate and to take the title to himself, and even if she had furnished the money to enable him to carry on these transactions, which the evidence fails to show, her claim would be inferior to the claims of her husband's creditors who had no notice of her latent equity.

In Miller v. McLin, supra, the Court said:

"When the wife gives her money to her husband, and he invests it in land, taking the title to himself, although it may have been agreed between them that the title should be taken to her, her claim will be subordinated to that of the creditors of the husband who are attempting to subject the land to the payment of debts created while the title was in the husband and without knowledge of the equity of the wife. It would be manifestly unfair to creditors to let the wife take the land on the faith of which the husband was allowed to create debts."

The lower court did not err in refusing to reform the deed from the Methodist Hospital to H. M. Hoskins for the house and lot in Ashland, Ky., or in canceling the deed of March 15, 1927, from H. M. Hoskins, to Viola Hoskins and impressing on the property therein conveyed a lien for $2,600, the amount of H. M. Hoskins' then existing indebtedness to the Pikeville National Bank.

The court did err, however, in ordering a sale of the undivided one-half interest conveyed by the canceled deed and adjudging appellant $1,000 out of the proceeds as the value of her homestead. The trustee in bankruptcy did not seek a sale of the property, but only asked that the deed be canceled and a lien impressed upon the property for the amount of the bank's debt. The court should have limited its judgment to the relief prayed for.

The trustee in bankruptcy may then take such steps as he deems proper and the appellant can assert in the bankruptcy court any claim she may have for homestead.

The facts in the other appeal which involves the validity of a deed from G. W. Hoskins to Anna Hoskins, his wife, are somewhat similar to the facts just recited. G. W. Hoskins and Anna Hoskins were married in 1918, and soon after their marriage Anna Hoskins claims that they entered into a written contract which reads as follows:

"Neon, Ky. Oct. 5th, 1918.

"This article of agreement made and entered into the day and date above mentioned by and between Anna Hoskins and G. W. Hoskins both man and wife of Neon, Letcher County, Kentucky.

"Witnesseth: That Anna Hoskins does this day employ G. W. Hoskins her husband as her agent to trade for her in real estate and any things that he may think that will be a good investment for her such as buying real estate selling and swapping. G. W. Hoskins agrees that any time that she, Anna Hoskins, may demand of him to turn over to her real estate that G. W. Hoskins may have. G. W. Hoskins agrees to at any time that she demands of him to turn over her money or to deed to her real estate that he might have of hers without giving her any trouble, Anna Hoskins agrees to give G. W. Hoskins 50% of the profits that may be made on real estate or trading for her and G. W. Hoskins agrees to except this as full payment for his services. I hereby turn over to G. W. Hoskins $1,640.00 in cash for the purpose of trading in the above outlined.

"(Signed)   G. W. Hoskins,
"(Signed)   Anna Hoskins.

"Witness: W. Garrison."

She claims that she turned over to her husband $1,640 at the time this agreement was made and that he bought and sold real estate until September 4, 1928, when they made a settlement. They then owned a house and lot in Pikeville which had been conveyed to them jointly. Pursuant to this alleged settlement, G. W. Hoskins on September 4, 1928, conveyed to Anna Hoskins a 40 per cent undivided interest in the property, which, in

addition to the one-half interest then owned by her, gave her an undivided 90 per cent interest. The trustee in bankruptcy of G. W. Hoskins sought to set aside the conveyance of September 4, 1928.

It is conclusively shown that G. W. Hoskins was then indebted to the Pikeville National Bank in the sum of $4,200. Mrs. Hoskins admits that her husband dealt in real estate always taking title to himself with her knowledge and consent, but it is her contention that he was using her money and that the deed of September 4, 1928, was made when the contract entered into between them in 1918 was closed and a settlement reached. This case cannot be distinguished in principle from the cases cited, supra.

In Miller v. McLin, supra, after quoting section 2127 of the Kentucky Statutes, the court said:

"But this statute does not prevent the wife from giving to her husband as much of her property as she pleases, nor does it authorize the court, in a contest between the wife and the creditors of the husband, to restore to her money or property that she has seen proper to furnish to her husband. A married woman can make contracts, sue, and be sued, and she has the right under the existing law to make such disposition of her personal estate as she pleases, and, when she permits her husband to take her money and invest it in his name, she occupies no better position so far as the creditors of the husband are concerned than would a stranger who had followed a like course of dealing.

G. A. Hoskins' indebtedness to the Pikeville National Bank was incurred while the title to the real estate, which was later conveyed to his wife, was in his name, and the creditor was without notice of the fact that she furnished the money or that it was agreed that real estate to which her husband had taken title should be deeded to her. Aside from this, under the facts disclosed by the record several badges of fraud are shown which shifted the burden to the grantee, Mrs. Hoskins, to sustain the bona fide of the transaction. In cases like this transactions between a husband and wife will be scrutinized closely, and the wife will be required to rebut the inferences created by the badges of fraud that have been shown. Campbell v. First National Bank of Barbour-

ville, 234 Ky. 697, 27 S. W. (2d) 975. This the appellee, Anna Hoskins, failed to do. Her own testimony is evasive, indefinite, and unsatisfactory. The evidence as a whole and the inferences deducible therefrom lead to the conclusion that no consideration passed or was intended to pass when her husband executed the deed in question to her.

Both Viola Hoskins and Anna Hoskins contend that a trust resulted in favor of each of them, since they had paid the consideration for the properties which had been conveyed to their respective husbands. The evidence shows, however, that each of them knew her husband was taking the title to real estate in his name and she consented to this arrangement. Under such circumstances no trusts resulted in favor of Viola Hoskins or Anna Hoskins. Kentucky Statutes, sec. 2353; Miller v. McLin, supra; Phillips v. Bowles, supra. It follows from what we have said that the lower court erred in refusing to cancel the deed of September 4, 1928, from G. W. Hoskins to his wife, Anna Hoskins, and in dismissing the plaintiff's petition.

The judgment as to Viola Hoskins is affirmed on the original appeal and reversed on the cross-appeal; and the judgment as to Anna Hoskins is reversed, with directions to cancel the deed in question.