## Springfield State Bank v. Kelly et ux.

(Decided Nov. 4, 1936.)

(As Modified on Denial of Rehearing March 26, 1937.)

C. E. RANKIN and W. F. GRIGSBY for appellant.

JOSEPH POLIN, CHARLES M. McCHORD and J. W. S. CLEMENTS for appellees P. J. and Mayola Kelly.

JOHN A. POLIN for appellee Clements.

H. M. GRIGSBY for appellees Boone & Jouett, McClure & Son, and Haydon Coal & Oil Co.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Reversing.

On October 30, 1934, and some time prior thereto, P. J. Kelly was indebted to the appellant, Springfield State Bank (hereinafter referred to as the bank) in the sum of $3,786.54, represented by two notes which Kelly executed and delivered to the bank, one bearing date of December 25, 1933, for $1,512.66 with 6 per cent. interest until paid, subject to a credit of $14.67 paid October 22, 1934; and another dated June 30, 1934, for the sum of $2,273.88, with interest until paid.

At the time P. J. Kelly created the indebtedness above mentioned and many years prior thereto, he was the owner of a certain farm in Washington county, Ky., consisting of approximately 131 acres, and on October

30, 1934, he deeded his farm to his wife, Mayola C. Kelly, his codefendant below and coappellee in this appeal, for a recited consideration "of a large indebtedness which the party of the first part owes and has long owed to the party of the second part, with interest amounting to a sum far in excess of the value of the property hereby conveyed, * * *" subject to a homestead exemption of $1,000 which he reserved to himself.

On November 19, 1934, the bank filed this action in the Washington circuit court seeking a cancellation of the deed from Kelly to his wife, on the ground (a) that the property was conveyed to Mrs. Kelly with the intent to delay, hinder, or defraud the creditors of P. J. Kelly, including the bank; or (b) the consideration stated in the deed was untrue and the deed was made and delivered to Mrs. Kelly without valuable consideration therefor; or (c) that P. J. Kelly was insolvent and the deed was made and delivered to Mrs. Kelly in contemplation of insolvency, and with the design to prefer her as one of his creditors, to the exclusion, in whole or in part, of the plaintiff and other creditors.

P. J. Kelly and Mrs. Kelly filed separate answers. P. J. Kelly denied that he made the deed with any fraudulent intent, or that there was no consideration paid therefor, or that it was intended as a preference. He further pleaded that he was indebted to his wife, in various sums of money which she had loaned to him at various times, for the purpose of paying a balance of purchase money due on the land which he owed his grantor and paying his debts incurred in erecting a dwelling, barns, and other improvements on the land, including taxes, etc., all of which he agreed and promised to pay her with interest; that "finding himself ruined, like most farmers by the great decline in the value of his property and the actual loss in farming for the last six years, he endeavored to effect a settlement with his creditors by pro-rating the proceeds, or value, of his property among all his creditors including his wife, who was and is, his chief creditor, hoping thereby to salvage something to save her from want, particularly did he open negotiations thereupon with plaintiff, but it, through its chief agent, declined to recognize the validity or extent of his wife's claim as it does now in its petition. Fearing that the plaintiff, or some other creditor, or creditors, might attach his property and

thereby secure an advantage over his wife who was his oldest and much the largest creditor, he made the conveyance complained of to her merely to secure her rights, knowing full well it could and would be questioned * * *''

Mrs. Kelly also denied the bank's allegation of fraud, no consideration and preference and further pleaded that she and P. J. Kelly were married in the autumn of 1904 at which time her husband was the owner and in possession of the land in question but was indebted for unpaid purchose money or money borrowed to make payment on the land, and soon after their marriage she received from her father's estate $500, which sum, at the request of her husband, she loaned to him before the 15th day of January, 1905, and which was used by him in paying his indebtedness on the land, and this sum with interest now amounts to $1,850.90; that in January, 1918, she received a further inheritance from her father's estate in the sum of $1,-228.51, which sum she also loaned to her husband, which was used by him in paying indebtedness incurred by building a house, barn, and other improvements on the land and that said sum with legal interest thereon now amounts to the sum of $2,481.65. She further detailed other sums of money that she had received from the estate of her mother and a sister during the years 1915, 1916, and 1917, which sums she also loaned her husband for the purposes indicated above, and that she received various other sums of money from various investments and loaned those sums to her husband, all of which he promised and agreed to pay her with interest. She also listed various other claims consisting of small items ranging from less than $2 to approximately $150, which she alleged she paid for her husband on various store accounts for clothing, groceries, and many other family and household purposes, aggregating the sum of $2,123, and claimed interest thereon. The total indebtedness including interest which she claimed against her husband aggregated the sum of approximately $13,000. In her answer, we find this statement:

"Answering the ugly charge of fraud made by the plaintiff, defendant says she does not now and never had claimed more than her fair prorate on her claims out of the land covered by said deed and offered to settle with plaintiff on that basis before

the αeeα complained was executed but plaintiff was unwilling to settle on such terms."

Finally it was conceded by both P .J. Kelly and Mrs. Kelly that the deed of conveyance should be treated as a deed of assignment for the benefit of all the creditors of P. J. Kelly and that the land should be sold subject to homestead and the proceeds thereof divided between Mrs. Kelly and the bank according to their respective debts against P. J. Kelly.

The bank filed its reply denying certain material allegations of the answer, and pleaded that P. J. Kelly acquired title to the real estate in question in the year 1904 and within a few years thereafter and before any of the indebtedness to it by Kelly was created, the purchase money liens against the land were released of record, and since that time P. J. Kelly had held the land in his name and free of any incumbencies whatever until he executed the deed now in question, and its entire indebtedness sued for was created after the release of the liens aforesaid and the record showed that Kelly was vested with the fee-simple title to said land; and that it loaned him the sums of money sued on believing in good faith that he was the owner of said land and held a fee-simple title thereto as shown by the records.

By subsequent pleadings the issues were made and the evidence taken, and the chancellor held and adjudged the deed from Kelly to his wife to have the effect of a deed of assignment for the benefit of all of P. J. Kelly's creditors and ordered the commissioner to sell the land and adjudged that the proceeds of the sale be prorated among the creditors of P. J. Kelly. The court also gave the bank a personal judgment against P. J. Kelly for the amount of its notes with interest, and adjudged that Mayola C. Kelly recover of P. J. Kelly all her claims against him, except certain items, in the principal sum of $6,136.10 and interest thereon in the sum of $5,985.01, aggregating a total of $12,-121.11. The bank appeals from this judgment and Mrs. Kelly cross-appeals as to the items the court refused to allow her.

P. J. Kelly and Mrs. Kelly both categorically denied in the traverse part of their answers, and so testified in their depositions, that the deed was not intended

as a preference to Mrs. Kelly. But it will be seen from their respective answers quoted above that the deed was made by the grantor and accepted by the grantee with the full knowledge of the grantor's insolvency and for the purpose of enabling the grantee, Mrs. Kelly, to share her pro rata of the proceeds of the land in satisfaction of her alleged debts against her husband. Aside from the evidence of P. J. Kelly and Mrs. Kelly, there is other evidence conducing to show that Mrs. Kelly loaned to P. J. Kelly the sums of money claimed and all of which he promised to pay her. If it be conceded that P. J. Kelly was indebted to Mrs. Kelly as claimed by them, this does not necessarily mean that Mrs. Kelly is entitled to any of the proceeds of the sale of land applied to her debt before the bank receives its claim in full.

There is no claim or pretense that Mrs. Kelly had any mortgage on her husband's property or other evidence of her debts, indeed not as much as a note, her claims being based solely upon the verbal promise of her husband to pay her the sums claimed. It is also undisputed that P. J. Kelly had a fee-simple title deed to the land in question and the bank extended him credit upon the faith that he was the owner of the land and without notice of the claims of Mrs. Kelly, who permitted her alleged claims to remain in the form of open accounts these many years, thereby enabling her husband to obtain credit on the faith of the deed. It is the established rule that transactions between husband and wife will be closely scrutinized when such claims are prejudicial to or conflict with the claims of bona fide creditors.

Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050, 1051 is a case where the husband became involved in a suit for damages for malpractice as a physician. Just previous to the trial he conveyed all his property to his wife. The conveyance was attacked under section 1906 of the Kentucky Statutes, and the defense was that the conveyance was in good faith for a consideration consisting of payment of a debt which the husband owed the wife for money she had inherited many years prior to the deed and which sum had been invested in the land, the deed to which was in the husband's name. The circuit court adjudged the transaction a preference, awarding a lien to the wife for the amount of her debt

and refusing to hold it a fraud. In reversing that judgment with directions to award the plaintiff a judgment subjecting the property to his debt, and allowing the wife no relief, the court, after quoting section 1906 of the Statutes, said:

"The statute provides the test by which the validity of the conveyance is to be measured; if it is made with the intent to delay, hinder, or defraud a creditor, it is fraudulent and void. It is not a question of how much the grantee paid for the property; on the contrary, the question always is: What was the intent of the grantor in conveying the property? And, if it was fraudulent, did the grantee know of his grantor's fraudulent intent?"

After citing and quoting from a number of cases the court further used this language:

"Neither does the treatment of Mrs. Ligon's debt against her husband as a valid debt make the fraudulent conveyance any less fraudulent."

20 Cyc. p. 487. See, also, Turner v. Hammock, 229 Ky. 836, 18 S. W. 2d) 285.

In Lewis v. Barber, 243 Ky. 519, 49 S. W. (2d) 328, the son of Barber killed a man and thereafter deeded his land to his father. The deed was attacked under section 1906 of the Statutes. The father defended by claiming that prior to the conveyance he had become liable for certain attorney's fees and expenses for his son, and the deed was made in payment of these obligations without fraudulent intent on the part of the grantor or knowledge of such intent on part of the grantee. On appeal to this court the deed was held fraudulent and that whatever rights the father may have in the property would be postponed until the demands of the plaintiff in that action had been satisfied.

Again, in Miller v. McLin, 147 Ky. 248, 143 S. W. 1008, 1009, it appears that in the lifetime of Miller he had received certain money from his wife to be invested in a farm, but he took the title in his own name and later incurred debts. The question arose as to whether the widow or creditors were entitled to the proceeds of the land. In disposing of the question the court said:

"When the wife gives her money to her husband, and he invests it in land, taking the title to himself,

although it may have been agreed between them that the title should be taken to her, her claim would be subordinated to that of the creditors of the husband who are attempting to subject the land to the payment of debts created while the title was in the husband and without knowledge of the equity of the wife. It would be manifestly unfair to creditors to let the wife take the land on the faith of which the husband was allowed to create debts."

And in the same opinion referring to section 2127 of the Statutes, it was said:

"But this statute does not prevent the wife from giving to her husband as much of her property as she pleases, nor does it authorize the court, in a contest between the wife and the creditors of the husband, to restore to her money or property that she has seen proper to furnish to her husband. A married woman can make contracts, sue, and be sued, and she has the right under the existing law to make such disposition of her personal estate as she pleases, and, when she permits her husband to take her money and invest it in his name, she occupies no better position so far as the creditors of the husband are concerned than would a stranger who had followed a like course of dealing."

See, also, Hoskins v. Hoskins' Trustee, 241 Ky. 420, 44 S. W. (2d) 302; Wilson v. Newberry, 238 Ky. 635, 38 S. W. (2d) 695.

Thrasher v. Craft, 242 Ky. 101, 45 S. W. (2d) 827, appears to be precisely in point with the case at bar. The husband received funds from his wife and invested them in land taking title to himself. After becoming involved he conveyed the land to his wife in consideration of the funds so furnished by her. It was held that the deed was fraudulent as to creditors who extended credit on the faith of the land while it was in the name of the husband, and the property was subjected to the payment of the debt. Also in Motch's Adm'r v. Glenn, 251 Ky. 235, 64 S. W. (2d) 900, the wife loaned money to the husband with which to engage in business. Later he conveyed the property to his wife in settlement of the debt. The conveyance was attacked by his creditors as fraudulent and the court held that, since the wife had permitted the hussand to use and control the

property as his own, she could not, after debts were incurred, take the property in payment of her debt, and her debt was held inferior to that of creditors. See, also, Orr's Adm'r v. Orr's Ex'r, 10 S. W. 640, 10 Ky. Law Rep. 755.

Many other like and similar cases could be cited but we deem it unnecessary to incumber this opinion by multiplying authorities.

The pleadings and evidence in this case, measured to the authorities herein cited, impel us to the conclusion that the deed from P. J. Kelly to his wife, coappellee, was fraudulent in so far as the bank's debt is concerned to the extent of nonexempt property, and the bank is entitled to its claim in full, before Mrs. Kelly is entitled to share any of the proceeds of the sale of the property.

These conclusions make it unnecessary to discuss other questions raised.

For reasons stated the judgment is reversed on the appeal, and affirmed on the cross-appeal, and remanded for proceedings consistent with this opinion.