## Clausen v. First Nat. Bank of Louisville.

March 24, 1939.

Churchill Humphrey, Judge.

HERBERT MOORE for appellant.

LAWRENCE S. LEOPOLD for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellee, First National Bank of Louisville, Kentucky, filed this action against John D. Clausen, on two promissory notes aggregating $725.30. By amended petition the appellant, Alice Z. Clausen, wife of John D. Clausen, was made a party defendant, it being alleged that the defendant, John D. Clausen, had turned over to her or paid to her large sums of money, which had been deposited to her account in the People's Bank of Louisville. The People's Bank was also made a party to the action and an attachment obtained against a deposit of $652.04 in that bank to the credit of appellant. Judgment was rendered for plaintiff on the notes against Clausen and his wife, sustaining the attachment as to the $652.04 on deposit to her credit and ordering the bank to pay that sum to the plaintiff. From that judgment appellant, Alice Z. Clausen, prosecutes this appeal.

The evidence discloses that appellant opened a bank account with the People's Bank on September 14, 1936, and the total amount deposited by her up to the month of March, 1937 was $646. At the time the account was opened, she, only, was authorized to draw checks against the account, but several months thereafter (the exact time does not appear) her husband was authorized to check against it. In the early part of

March, 1937, John D. Clausen received payment of an attorney's fee amounting to approximately $4,000, and this payment becoming known to appellee resulted in the filing of this action. Appellant, in her answer, denied that her husband had turned over to her or paid to her any money.

The deposition of John D. Clausen was taken on cross-examination and he denied that he had deposited any of this fee received by him to his wife's credit. He stated that he had paid to her at different times something like $2,000 that he owed her. The bank records were later examined and disclosed that on March 15, 1937, Mr. Clausen had deposited $2,500 of this money to his wife's credit. These records also reveal that on March 8 $300 was deposited to her account and $500 on March 23, 1937. Mr. Clausen later admitted that his testimony given on cross-examination was untrue and attempted to account for the falsity thereof in a wholly unsatisfactory manner.

Mrs. Clausen, in her testimony, at first denied that Mr. Clausen had deposited any of this money to her account. She also stated that his testimony to the effect that he had paid her something like $2,000 was untrue. During the first part of her testimony, as substantiating the truth of her statement that none of the fee received by Mr. Clausen had been deposited to her account, she produced and filed what purported to be a true copy of the bank statement of her account, which showed for the month of March the deposits of $300 and $500 above mentioned, and also another deposit of $50, but which omitted the deposit of $2,500 on March 15. During the taking of her deposition, an examination of the bank records was made which disclosed the $2,500 deposit, thereby making perfectly apparent that the copy of the bank statement filed by Mrs. Clausen was incorrect. She then stated that she did not know that Mr. Clausen had deposited this sum to her credit.

She also testified that Mr. Clausen attended entirely to the bank account; that she was so busy in operating a school and attending to other numerous duties that she had no time to attend to the bank account herself and permitted her husband to do so. However, it is apparent that Mrs. Clausen must have checked on this account herself until very near the time these deposits were made in the month of March, because her husband

was not authorized to check on the account until several months after it was started. When questioned as to the deposits of $300 and $500 above mentioned, Mrs. Clausen, in response to a question asked her, replied, "Some of that money is mine," but later in her testimony claimed that both the $300 and the $500 deposits was entirely her money. She was questioned as to how she acquired this $800, but failed utterly to give any plausible explanation as to the source from which she received these sums.

Both Mr. and Mrs. Clausen testified that after the deposit of $2,500 to her account by him, he checked out all of that sum and possibly $1,000 more of her money from the account. They were both questioned closely as to whom such payments were made and no satisfactory evidence showing such payments was produced by them. No canceled checks showing how this money was checked out were produced, although in their depositions repeated demands were made therefor and they were requested, in the event they could not produce the checks, to produce the stubs of the check books. Mrs. Clausen, at one time in her testimony, in response to questions asked her, said, "I have the stubs of my check book; I asked for them, got them from Mr. Clausen. I guess they are at home somewhere." Later in her testimony and pursuant to highly leading questions by her attorney, she said she did not have the stubs and that her husband never used a check book with stubs in it.

Mr. Clausen, in attempting to account for the expenditure of all the $2,500 deposited by him, produced a list of payments aggregating $1,568.37, but produced no checks showing these payments or any other evidence except the statement prepared by him. His evidence on this point has no very convincing ring of candor or sincerity.

From this resume of the evidence, it is seen that the sum of $2,500 of Mr. Clausen's money was deposited to his wife's credit; that, although the total amount of deposits in her account for a period of six months was $646, yet in the month of March, shortly after her husband received this fee, there appear in her deposits, in addition to the $2,500 admittedly deposited by her husband and another sum of $50, the above mentioned deposits of $300 and $500, which appellant does not satisfactorily show were received by her from any

source. We therefore feel impelled to the conclusion, in view of her statement, ''Some of the money is mine,'' that at least a larger part, if not all, of the $800 was also her husband's money put into her account. As it is established that a large amount of her husband's money was placed to her account, the burden thereupon devolved upon her to show that her husband checked out and received for his own use and benefit the money thus deposited by him to her credit. In short, the burden was on her under these circumstances to show that the $652.04 attached was her money and not her husband's and this we feel certain she has wholly failed to do by any satisfactory or reliable evidence. On the contrary, the evidence discloses to a reasonable degree of certainty that the money attached was her husband's money.

It is the established rule in this State that transactions between husband and wife will be closely scrutinized when such claims are prejudicial to or in conflict with the claims of creditors. Springfield State Bank v. Kelly, et ux., 267 Ky. 595, 102 S. W. (2d) 360. In Thrasher et ex. v. Craft, 242 Ky. 101, 45 S. W. (2d) 827, 829, it was said:

> ''In creditor's suit to cancel husband's deed to his wife, slight evidence, where badges of fraud are shown attending the conveyance, will shift to her the burden of rebutting the inferences thereby created and sustaining the bona fides of the transaction.''

In line with these authorities we have no trouble in reaching the conclusion that the transaction in question here should be closely scrutinized and that the burden was on appellant to rebut by satisfactory evidence the inferences created by the deposit of a large amount of her husband's money to her credit. We are of the opinion that she has failed entirely to meet this burden. On the contrary, it seems apparent from the evidence that she did receive the benefit of a sum of money, transferred to her by her husband, greater than that for which judgment was rendered against her in this action. Such transactions are void as to existing creditors by virtue of sections 1906, 1907 and 2128, Kentucky Statutes.

The judgment is affirmed.