# Honore's Executor *vs* Bakewell, *et al.*

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Vendor and vendee. Lien. Notice. Dilligence.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

IN 1826, John A. Honore sold and conveyed to Bell and Barbaroux, two lots in Louisville, for $12,500, payable in twelve years, with interest on said sum at the rate of six per cent. per annum, payable quarter yearly. The consideration and terms of payment were expressed on the face of the deed. In 1828, Barbaroux sold and con-

veyed his interest in the purchase to Bell, and Bell after-wards, in 1828, sold and conveyed a designated parcel of said lots to Wm. G. Bakewell, for $4,500, payable in five annual instalments, with interest. The deed made by Bell to Bakewell, recites the terms of sale, and that Honore held a lien on the property, and contains three alternative stipulations: First, That Bakewell, if he elects to do so, for his indemnification, may pay to Honore the consideration of his purchase, provided he procures from Honore an acquittance to said Bell, for the amount. 2nd. That he may pay to Bell, relying upon his warranty, if he desires to stop the accruing interest. 3rd. If Honore will not receive the pay and release said ground from the lien, that Bakewell, for his indemnity, shall have the privilege of withholding the principal until his title can be secured, paying interest on the amount semi-annually, to said Bell.

Bakewell elected to make payment to Honore, and executed his note or notes to him for the amount, and Honore executed his acquittance to Bell, crediting the amount on his demand against him.

The note or notes of Bakewell to Honore, were renewed from time to time, until the amount, by payments, was reduced to $2,400, and a note for that balance was executed by Bakewell to Honore on the 28th December, 1841, payable four months after date. On one occasion, prior to the execution of this last note, Bakewell paid, in cash, about one half of the amount then due, and gave a check to the Bank for the residue, which Honore retained a few days without presenting it to the Bank for payment, and returned it to Bakewell, and the check, by mutual consent, was cancelled, and Bakewell's note given for the amount, which by renewals, produced the note in question.

In 1842, Bakewell being much embarrassed and about to fail, executed a mortgage deed to A. & O. Hite, on the parcel of ground sold to him, and on other real and personal estate, to secure them a debt which he owed them, and to indemnify and secure them as his sureties and accommodation endorsers to the Bank of Kentucky, the Northern Bank and other Banks in and out of the

State. Honore filed his bill, which after his death was revived in the name of his executor, asserting his lien upon the parcel of ground for the amount of the note as the unpaid consideration. A. & O. Hite answered, making their answer a cross bill against the complainants, Bakewell and the Banks, resisting the lien, and praying a foreclosure and sale of the mortgaged estate in payment of their debts and in discharge of their liabilities.

The Chancellor disallowed Honore's lien and dismissed his bill, and decreed upon the cross bill a foreclosure and sale of the mortgaged estate as prayed for, and Honore's executor has appealed to this Court.

It is contended, 1st. That Honore, by his acquittance to Bell, discharged his lien upon the parcel of ground in question, springing out of the sale to Bell and Barbaroux, and that the law implied no lien in his favor for the consideration of Bakewell's purchase. 2nd. That if a lien would be implied in his favor, that that lien was waived and lost forever by the receipt of the check which was afterwards surrendered and cancelled. And 3rd. That if the lien was not waived, that A. & O. Hite had no notice of it, nor the means to acquire notice.

1st. There is no question that Honore, by his acquittance to Bell, surrendered his lien to the extent of his acquittance on his original sale to Bell and Barbaroux; but we are clearly of opinion that upon the sale by Bell to Bakewell, and the election on the part of the latter of the alternative stipulation in the deed, to pay Honore the consideration of his purchase, and his assumpsit to pay and the acquiescence in the arrangement, by Honore, and his acceptance of Bakewell's assumpsit and acquittance of Bell from the amount, a lien on the parcel purchased by Bakewell, was raised in his favor for the amount of the consideration so assumed to be paid to him. Had Bell received Bakewell's notes for the consideration, a lien would be implied in his favor; and had those notes been assigned to Honore as payment of so much and an acquittance for the amount executed to him, as assignee of Bell, Honore would certainly have held a lien on Bakewell's purchase for their payment; and had these assigned notes been lifted and other notes, in the form of

HONORE'S EX'R.
*vs*
BAKEWELL, *et al.*

Decree of the Chancellor.

A vendor taking the assumpsit & note of a purchaser of part of a lot sold in discharge of so much of the price agreed to be given by the first vendee, has in equity a lien on the part purchased by the sub-purchaser to the extent of such assumpsit.

renewals executed in their stead, though such renewal might have had the effect to discharge Bell from his liability on the assignment, they could not have had the effect to discharge Bakewell or his purchase from that responsibility to which he and it were before subject. The debt which was the consideration of his purchase, was not paid or satisfied by the renewal of notes, which amounted to no more than the renewal of the evidence of a debt which, as the unpaid consideration of the sale and purchase, operated as a lien upon the parcel of ground sold and purchased. If by the assignment of Bakewell's notes to Honore, the latter would hold a lien upon the ground sold for their payment, and even by a renewal of those notes by Bakewell, Honore would not be deprived of his lien, we cannot perceive the propriety of depriving him of his lien under the arrangement, which was consummated between the parties in this case. Bell has sold and conveyed to Bakewell, stipulating on the face of the deed, that Bakewell instead of paying the consideration to him, might pay it to Honore. Bakewell assumes to pay it to Honore, and Honore accepted his assumpsit, and acquits Bell from the amount. If a lien would have been implied in favor of Bell, had the notes for the consideration been made to him, and the lien thus implied in his favor would have passed to Honore by the assignment of the notes to the latter, we can perceive no good reason why Bell might not sell to Bakewell, stipulating on the face of the deed, that he might pay to Honore the consideration, and why his direct assumpsit to Honore for the payment of the consideration, would not raise a lien on the property sold, as well in favor of Honore for the payment, as in favor of Bell. If Bell, the vendor, could create a lien in favor of Honore by the assignment of Bakewell's notes, may he not, by express stipulation requiring or authorizing the payment or assumpsit to him, create a lien in his favor, provided he accepts the terms and undertaking on the part of Bakewell? Had Honore, by way of discharging his lien on the lots sold to Bell and Barbaroux, joined in the deed to Bakewell, and the consideration had been made payable to him, he certainly, as virtually a vendor and holder

of the notes for the consideration, would have held a lien on the ground sold for its payment. Though he does not join in the deed, he sanctions what is done, accepts Bakewell's assumpsit for the consideration, acquits Bell from the amount, and thereby surrenders his original incumbrance on the property sold. Though in the latter case he is not nominally a vendor, by joining in the deed, he is virtually and to all practical purposes, as much a vendor as if he had joined in the deed.

Nor is there any evidence, that by the sanction which he gave to the transaction, and acceptance of Bakewell's assumpsit, that he intended to waive all lien upon the ground, and look to Bakewell's personal responsibility alone for payment. Nor are there grounds for the implication of such an intention. *Prima facie*, a lien is implied in his favor, as the holder of the notes for the consideration, under the arrangement which was made, and the presumption can scarcely be indulged, that he would have released his original lien upon the ground, and personal claim upon Bell & Barbaroux, on his original sale, without looking as well to the lien which attached to the consideration of Bell's sale, made payable to him, as to Bakewell's personal reponsibility. The presumption may be fairly indulged, or at least the contrary has not been shown, that he intended to occupy the place of Bell, in all respects, in his claim upon Bakewell and the ground sold for payment of the consideration, and as such, may assert such lien as Bell could have asserted, had the notes been executed to and held by him.

It is true that it has been stated that this lien is confined to vendor and vendee, and will not be raised in favor of a third person. And from this general text laid down in the elementary books, the conclusion might be deduced, that no other than the vendor and general grantor could assert this lien. But this principle has been deduced from the cases of *Coppin* vs *Coppin*, (2 *P. Williams*, 496,) and the dictum of Lord Hardwick, in the case of *Pollexfen* vs *Moore*, (3 *Atkyns*, 272.) By referference to these cases, it will be perceived that the principle is merely asserted, that in marshaling assets a legatee will not be substituted to the lien of the vendor, who

The lien of vendor for purchase money, is not confined to him it may pass to third persons to whom the note for the consideration has been assigned, or to whom the vendee has assumed its payment.

HONORE'S EX'R.
      vs
BAKEWELL, et al. has exhausted the personalty in the payment of the consideration due him, instead of enforcing his lien upon the land; but by no means asserts the principle that a third person, to whom the note for the consideratlon has been assigned, or a third person to whom the consideration, by the terms of the sale, is made payable, has not a lien which he may assert against the land sold for its payment. And even the principle as to the right of a legatee to be substituted to the lien of the vendor against the heir in the case put, has been controverted by later decisions, (*Powell on Mortgages, late edition*, 3d vol. 1062, *note* 1st;) (*Coot on Mortgages*, 254–259;) *Turner* vs *Baignes*, (9 *Ves.* 209;) *Austin* vs *Halsey*, (6 *Ves.* 475;) *Macreth* vs *Simmons*, (15 *Ves.* 337;) (2 *P. Williams*, 295;) (1 *Maddox Chy.* 615.)

2d. We are equally clear that Honore has not waived or *A lien for the consideration of land sold, is not waived or lost by accepting a check on a bank for the amount which is not paid, but returned to the drawer and note taken.* surrendered his lien, by the acceptance of a check on the Bank, which was never presented or paid. By the subsequent surrender and cancelment of the check by the mutual consent of Bakewell and himself, who were at the time the only interested parties, it must be understood that Honoie was intended to be placed in *statu quo* in relation to his demand.

*The modern doctrine is, that a bill of exchange, accepted for the consideration of land sold, unless paid, is no waiver of the lien of vendor, nor is the renewal of a note for the consideration any waiver of vendor's lien.* The check was no payment, but a means or mode by which Honore might obtain payment. It was no more a payment than the execution or renewal of a bond or note or bill of exchange, for the consideration, which is accepted but not paid, which was formerly regarded as payment, or rather as a surrender of the lien, but which by later and more enlightened decisions, has been determined otherwise. The lien is a lien to secure the *payment* of the consideration, and *prima facie* it continues until payment is made, or it is waived or abandoned by some overt act on the part of the claimant, indicating an intention to do so, as taking and looking to other security for the payment, or until it has been lost by the transfer of the land to an innocent purchaser for a valuable consideration, without notice, or the means of notice. The bond, note, bill of exchange or check, is but the evidence of the amount due, and the means by which payment may be obtained or coerced, and may be changed or re-

newed from time to time, without actual payment. And from such change or renewal, the presumption cannot rationally be indulged that the vendor intended to surrender his lien, more than that he intended to surrender his debt. By any fair interpretation of the transaction, it must be understood that the parties intended by the surrender and cancelment of the check, and the execution of a note for the amount, *anti-dating* the same to the date of the check, that their rights should stand as if the check had not been given. What had been done, was undone before payment in fact had been consummated on the check. It would be a strange and unnatural interpretation of the acts of the parties, to construe the surrender and cancelment of the check as an inteded loan of money, rather than an intention to undo what had been done. Such a construction would carry the acts of the parties beyond their rational import, and would have the effect to subject Honore to a release of his lien upon a strained presumption against him, when his acts, by fair interpretation, manifested no such intention.

3d. A. & O. Hite are not innocent purchasers, without notice, or the means of notice. By reference to the deeds from Honore to Bell and Barbaroux, and from Bell to Bakewell, through which they derived title, they might have learned that Honore had not received the consideration, but had sold on a credit of twelve years, and that Bell had not received the consideration of his sale, but had also sold on a credit, giving to Bakewell the privilege of making payment to Honore. With the information thus afforded, it was their duty to enquire of Bell, Bakewell and Honore, *to whom Bakewell had assumed payment,* whether payment had been in fact made. Upon such inquiry they could not have failed to arrive at the truth, and failing to make it, they have been guilty of such negligence as precludes them from occupying the condition of innocent purchasers *without notice.*

*A purchaser cannot claim to be* innocent *purchaser without notice of lien, who by reasonable diligence, should know of the existence of a lien of a previous owner.*

The decree of the Chancellor is therefore reversed, and cause remanded, that the lien of Honore may be allowed and enforced.

*Pirtle, and Morehead & Reed* for appellant: *Duncan and Guthrie* for appellees.