# Howard et al. v. First Nat. Bank of Harlan, Ky.

(Decided Nov. 12, 1937.)

C. B. SPICER for appellants.

J. C. BAKER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER.—
Affirming.

Prior to August 10, 1931, W. L., Vestina, and Curtis Bailey executed a six months' note for $5,000 to the First National Bank of Harlan. Wix Howard and appellant Carter Howard were obligated on the original. This note was renewed at times, until the date mentioned when it was renewed without the signature of Wix Howard, he having died in the meantime. After that date the note was renewed several times, each time bearing the indorsement of Carter Howard. The last renewal was on August 10, 1933. Vestina Bailey was the wife of W. L. Bailey, and Curtis, a son.

A few days after the last renewal the same parties executed a note to the bank for $150, accrued interest on the above note, with Carter Howard as indorser. On September 15, 1934, the Harlan Bank, which had passed into the hands of state authorities for liquidation, brought an action seeking to recover of the three Baileys as principals, and appellant Howard as indorser, the aggregate of the two notes, with accrued interest.

Vestina Bailey answered, saying that at the time she signed the original note, and each of the renewals, she was a married woman, and that she was only surety, and since the proceeds of the note went to W. L. Bailey she was not bound, pleading and relying upon section 2127, Ky. Stats., commonly known as the "Married Woman's Act." The court upon proof adjudged her plea good, and relieved her from liability. Neither the bank nor Howard controverted Mrs. Bailey's plea.

After Howard's demurrers, general and special, had been overruled, he answered, denying the allegations of the petition and alleging that his indorsement was procured by the insistence of the appellee bank, its officers representing to him that the principals, the Baileys, were alone liable; that the bank agreed with and promised him that it would take a mortgage on property of the principals of sufficient value to secure the payment of the two notes, and that "no liability would attach to this defendant."

He alleges that at the time he indorsed the notes the three Baileys had ample real estate in Harlan county to secure their payment, and that Vestina Bailey "now" has real estate of sufficient value to satisfy both of said notes. He alleged that the bank disregarded its promise to secure a mortgage, which he says was made a condition to its acceptance of the notes, and by reason of such failure he was and is relieved of liability. Thereafter, plaintiff, by reply denied the allegations of the answer. Later Howard filed an amended answer alleging that in the original note and later renewals Wix Howard had signed on "the face of the note along with the defendants" (the three Baileys), and that he was an indorser, and when the plaintiff later accepted the renewal without the name of Wix Howard, "or the signature of the administrator of his estate," defendant was relieved from any liability by reason of his indorsement.

He further relied on the fact that the bank had accepted Vestina Bailey, a married woman on said note, and that the bank officers are now saying that she did "not receive any of the proceeds of said note;" that, at the time he signed the original note as accommodation indorser, the bank's officers represented to him that Vestina Bailey was a maker, and primarily liable; that, if the court should determine that Vestina Bailey was surety and not a maker of said note and thus discharge her, he should be released from liability, because the bank knew, but he did not know, that she was merely surety.

To this pleading the bank replied, denying its allegations and alleging affirmatively that appellant Carter Howard was the son of Wix Howard, and qualified as administrator of his father's estate, and was such at the time of the renewal. That when he indorsed the

note he (as administrator) knew that Wix Howard was deceased, and that he (defendant) had refused to sign said note as administrator. It was also alleged that Carter Howard was a brother of Vestina Bailey, and knew when he indorsed the note that she was a married woman.

At this stage of the proceedings the banking commissioner filed a petition in equity, in which he repeated the allegations of the original petition, and further alleged that on August 18, 1934, Carter Howard conveyed to his wife (who was made a defendant) certain described real estate by which conveyance he became insolvent; that the conveyance to the wife was made without consideration, with intent to hinder, delay, and defraud the bank in the collection of its debt. The court was asked to set aside the deed and order the land, or so much thereof as might be necessary, to be sold, the proceeds to be subjected to the payment of appellee's debt. It was alleged that all the Baileys were then insolvent. The defendants demurred and, without waiving demurrer, answered. By their joint pleading appellant .Carter Howard reiterated his' former pleadings to some extent and both denied that the conveyance of the real estate was without valuable consideration or that same was made for the purpose or with knowledge of fraud.

The bank replied, denying each allegation. Thus it seems the issues were completed, and after proof was taken the cause was submitted to the court on the pleadings and proof. The court, having theretofore consolidated the two actions, adjudged that Vestina Bailey, according to proof, was a married woman and had signed the note of her husband, W. L. Bailey, as surety, hence was not liable on the note.

It was then adjudged that the bank recover of W. L. and Curtis Bailey, and Carter S. Howard, the sums of the two notes, with interest. The court adjudged the deed of August 18, 1934, from Howard to his wife, to be void and set it aside. The defendants objected and excepted, and were granted appeal.

As the case is presented to us there appear to be only two instances urged in which it is claimed the court erred in rendering judgment. First, that appellant, being indorser, was released from liability on the note

when the bank releaesd Vestina Bailey. In support of this contention appellant cites section 3720b-120, Ky. Stats. 1936, and Williams v. Paintsville National Bank, 143 Ky. 781, 137 S. W. 535, Ann. Cas. 1912D, 350. A reading of the statute, and the case referred to, do not uphold the contention of appellant. The statute provides that a person secondarily liable is discharged (subsection 4) by the discharge of a prior party. As we read the statute it is clear that the discharge of a prior party, to have such a claimed effect, must result through some act of the payee or holder in due course. The rule does not apply here because the release of Mrs. Bailey was not with the consent of the creditor. The discharge was by operation of the law; the judgment of the court upon the married woman's plea.

As to the other defensive pleas made by Carter Howard relative to his non-liability, we may say we have considered same and find them to be without merit, as counsel for appellant perhaps, recognized, since neither the release of the former indorser or surety (Wix Howard), or the failure of the bank to protect this indorser, are urged as grounds for discharge of appellant. A reading of the proof discloses that neither of the grounds was sustained by satisfactory evidence.

Secondly, it is said that the court erred in adjudging the deed void since the proof showed the same was made without fraudulent intent; that there was a valid consideration supporting the conveyance, and the grantee did not accept the deed with knowledge of fraud or intent to defraud.

We have often written that courts look with suspicion upon transactions between persons occupying confidential relations. When such a transaction is opened for scrutiny, the burden is always upon the recipient of the property acquired to show that same was freely and fairly made; that it was fair, equitable, and not tainted with an intent to accomplish a fraudulent purpose. Maddox v. Maddox, 258 Ky. 121, 79 S. W. (2d) 402, and cases cited; Rowe v. Ratliff, 268 Ky. 217, 104 S. W. (2d) 437. In Farmers' Bank of Fountain Run v. Hagan, 242 Ky. 535, 46 S. W. (2d) 1084, we said that a conveyance from husband to wife should be subjected to a most searching scrutiny in order to prevent, if possible, perpetration of fraud as against creditors.

The bank's allegaticn that at the time of the al-

leged conveyance the debtor was insolvent; that the conveyance in question brought about a state of insolvency; that the transfer was without consideration, and made with fraudulent intent and knowledge, made a prima facie case, and it then became incumbent upon the grantee to show the contrary. Grand Lodge of Kentucky v. First National Bank of Kentucky, 251 Ky. 189, 64 S. W. (2d) 474, and cases cited therein. Therefore in the case at hand we look to the proof to ascertain whether or not appellees have, by convincing proof, shown that the transaction was in all respects in good faith. In the case of Magic City Coal & Feed Company v. Lewis, 164 Ky. 454, 175 S. W. 992, 993, we said:

"Fictitiousness of consideration and false statements and recitals as to consideration of a conveyance. * * * "The insolvency or considerable indebtedness of the grantor are badges of fraud."

See Combs v. Roberts, 237 Ky. 299, 35 S. W. (2d) 293; Chrisman v. Greer, 239 Ky. 378, 39 S. W. (2d) 678.

When the deed was made on August 18, 1934, Carter Howard was obligated on the notes in question to an amount of more than $5,000. The proof shows that at the time, the bank was active in pressing its claim against appellant; that at the same time appellant was indebted to his wife and others; the total amounting to a considerable sum, not exactly disclosed by proof, but to say the least more than $4,000. Carter Howard frankly admits that when he conveyed the property to his wife he thereupon became insolvent.

The testimony in regard to the consideration paid by the husband to the wife is not as clear as proof should be in cases of this sort, where the transaction is necessarily subject to the turning on of a strong light. Both parties say the consideration paid and received was $6,000, and the deed so recites. It is argued by appellant that the actual consideration was about $8,000, the additional sum of $2,000, representing what Mr. Howard owed his wife; $500 loaned to him, and $1,500, which it is said she used for him in discharging a former lien on the property conveyed. It seems to be admitted that the property conveyed, at the time, was not worth as much as $6,000. Regarding the payment of the consideration, Mr. Howard says his wife paid him $1,500 in money and turned over to him some notes which she held against her mother and brother, and

that thereafter the two debtors paid him the money and he gave the notes back to the wife, and, again, that she gave him the notes just after delivery of the deed; that he got the $6,000 in cash within a few months after the delivery of the deed.

Mr. Howard's testimony was quite vague as to his disposition of the $6,000. He says he paid his wife $500. This could have been liquidated in the transaction in question. He paid a man who formerly ran a machine shop seven or eight hundred dollars. He did not recall the man's name. He spent some (amount not shown) in sending his daughter to school. No part of the $6,000 was ever deposited in any bank, but in explanation he says banks in that part of the country were going into receivership. He owed his brother in Massachusetts $2,000, which he placed in an envelope and mailed to him without registry or insurance. The remainder was used, as he says, in the payment of open accounts and other debts which he owed to various undisclosed persons.

When it comes to an explanation of the sources of the $6,000 which the wife paid, it strikes us that the transactions which resulted in her procurement thereof were susceptible of much more clarifying proof. The wife, testifying, said she had some money when she married, and sold some property "along for about ten years after I married." She says she had $1,500; her brother owed her $2,000, and her mother $2,500, all of which she put into the purchase of the real estate. She also says she sold all her property between 1912 and 1921. The notes her mother and brother owed her were for lots they owned together and sold. She thought she had as much as $2,000 in the conveyed property, since her husband had been getting money from her all along since they were married; that her mother and brother paid her in cash at her home. She says that her husband did not pay her back $500 which he says he owed and paid; nor did he pay the $1,500 he owed her on account of the discharge of the lien. Contrary to what Mr. Howard said on the subject, the wife said that she kept the notes; no one save her had ever had them until they were paid.

The mother testified that she bought some property from her daughter, and also got some money from her, so that along about the time the deed in question was

made she owed her $2,500. Mrs. Howard wanted her money about that time; the mother had on hand only $200, but got the balance "from some folks who owed me." When asked to name any one who owed her any part of the $2,300, she was compelled to say she could not do so. The brother also testifies that in 1934 he owed his sister $2,000, which he paid in that year. This was paid in cash "along in the spring, April or May." He kept his money at home. He got a receipt but destroyed it. In all these transactions, no deed, receipt, or canceled note was exhibited. If it were possible to have fortified the proof, it was not done. We could point out other instances of weakness in the proof, but it would be of no useful purpose.

Bearing the burden of showing the bona fides of the questioned transaction, the appellants have failed to show that it was free from the charge of intent to save the property from passing to Mr. Howard's creditors. In fact it is noted that appellant Howard in answer to the simple question, "How much was the property worth?" said, "well I don't know, she thought it was pretty high, but she wanted to keep the property; she likes a pretty home."

The above, to some extent, answers the argument that Mrs. Howard was entirely free from knowledge of any intended purpose to save the property from being subjected to her husband's debts. It is true she says she did not know how much he owed, and denies knowledge of his obligation to the bank, but it is equally true that she knew that the property conveyed was all the property her husband had; that its conveyance would result in his immediate insolvency. She knew that he owed her $2,000. She knew that all during their married life "he got money from me." "He kept after me for money, and I told him if he was going to have to have money, he would have to make me safe in it, and I told him he could just deed the place over to me and I would let him have the money." We think there is sufficient proof from which it may be reasonably concluded that the wife knew that the transaction was not in good faith. Rowe v. Ratliff, supra.

It is lastly urged that in any event Mrs. Howard was entitled to have the court adjudge her a lien on the property, to the extent that the proof shows consideration paid by her. We are not here called upon to decide

594

or discuss this phase of the case. We note that what purports to be the joint answer of the two appellants is a mere denial of the allegation of the plaintiff bank as to the purpose and intent of the transaction. There is no pleading which would have authorized the court below to pass on the question of Mrs. Howard's right to a lien. In addition to this suggestion it is noted that the court did not direct or order a sale of the land and distribution of proceeds as per the rights of parties. This question not having been decided below cannot now be considered. Wunderlich v. Scott, 242 Ky. 481, 46 S. W. (2d) 753.

Judgment affirmed.