**ALT et al. v. BURT.**

Court of Appeals of Kentucky.
June 8, 1951.
Rehearing Denied Nov. 21, 1951.

976

C. E. Schindler, David A. Sachs, Jr., Louisville, for appellants.

Will H. Fulton, Woodward, Hobson & Fulton, Henry D. Hopson, and Wallace & Hopson, all of Louisville, for appellee.

CULLEN, Commissioner.

In an action in the Jefferson Circuit Court, against Anna C. Alt, her husband George Alt, and the Cherokee Development Corporation, the trustee in bankruptcy of George Alt, Bankrupt, sought judgment recovering for the benefit of the bankrupt estate certain shares of stock in the Cherokee Development Corporation held by the defendant Anna C. Alt. Upon application of the plaintiff, a receiver was appointed to take charge of the stock during the pendency of the action. Following a trial, judgment was entered adjudging that the transaction pursuant to which the defendant Anna C. Alt acquired the shares of stock was fraudulent and in violation of KRS 404.020, ordering that the defendant Anna C. Alt endorse and assign the stock certificates to the trustee in bankruptcy, and ordering the defendant Cherokee Development Corporation to transfer the stock on its books to the trustee in bankruptcy.

Anna C. Alt appealed from the order appointing a receiver, and all of the defendants have appealed from the final judgment. The two appeals have been consolidated in this Court.

Prior to the institution of the action in the Jefferson Circuit Court, the referee in bankruptcy, on motion of the trustee in bankruptcy, had entered a summary "turnover" order, requiring that the corporate stock be turned over to the trustee. An appeal was taken to the United States District Court, which affirmed the action of the referee, but on appeal to the United States Court of Appeals the latter court reversed the judgment, 6 Cir., 181 F.2d 996, holding that Mrs. Alt's claim to the stock was more than colorable and therefore she could not be deprived of the stock by summary order.

The transaction pursuant to which Mrs. Alt acquired the stock in question, which transaction the circuit court found to be fraudulent and void, originated with the purchase by the defendant George Alt of a lot in the City of Louisville. The purchase was made on May 9, 1947, at the price of $15,000, of which Alt paid $2,000 in cash, giving a lien for the balance. On June 20, 1947, the Cherokee Development Corporation was organized by Alt and his attorneys, with a capital stock of $5,000, represented by 50 shares of $100 each. On the day of organization, the board of directors met and adopted the following resolution: "Be It Resolved: That the corporation purchase the property located at the intersection of the Northeast line of Everett Avenue and the Northwest line of Cherokee Parkway for the sum of $15,000.-00 and that forty-one shares of the capital stock of the corporation be issued to Anna C. Alt, three shares to George Alt, three shares to C. E. Schindler and three shares to C. E. Schindler, Jr., in consideration of the purchase price."

The two Schindlers' mentioned in the resolution were the attorneys for the corporation.

Pursuant to this resolution, George Alt conveyed the lot to the corporation, and the shares of stock were issued. Immediately thereafter, George Alt endorsed to Mrs. Alt the three shares that were issued to him.

The only capital that went into the corporation on its formation was the lot conveyed to the corporation by George Alt. Following the acquisition of the lot, the corporation secured a FHA loan of $170,-600 and proceeded to erect an apartment building on the property. Thirteen Thousand Dollars out of the proceeds of the loan went to pay off the purchase lien on the lot, and the balance was used for construction of the building. George Alt was the contractor for the construction of the building, and under his contract he was entitled to the sum of $25,590 for his services as architect and contractor. However, it appears that the construction of the building cost more than was anticipated, and that Mr. Alt did not retain any of the fee to which he was entitled, but expended all of the proceeds of the FHA loan in construction costs.

In addition to contributing the amount of his fee as contractor and architect, it appears that Mr. Alt paid an inspection fee of $853 at the time the FHA loan was secured, and that he later contributed to the corporation an additional sum of $526.50.

The transaction described above was attacked by the trustee in bankruptcy as a fraudulent conveyance, in violation of KRS 378.010, and as an invalid transfer between husband and wife in violation of KRS 404.-020(2). The lower court found that the transfer was fraudulent and in violation of KRS 404.020(2).

On the appeal from the final judgment, the appellants contend (1) that the judgment in the United States Court of Appeals was res judicata on the question of validity of the transfer; (2) that the appellants were entitled to a jury trial; (3) that the Cherokee Development Corporation is not a proper party to the action; (4) that KRS 404.020(2) is not applicable; and (5) that the decision of the trial court is not in accordance with the pleading and proof. On the appeal from the order appointing a receiver, the appellant Anna C. Alt contends that there was no showing that the property in question was in danger of being lost, removed or materially injured.

We are of the opinion that there is no merit in appellant's first contention. The only question decided by the federal court was that the claim of Mrs. Alt to the stock was real and substantial and not merely colorable. Having found that her claim was real and substantial, the court did not undertake a determination of the merits, but dismissed the summary proceedings. This left the matter open for institution of a plenary action either in the federal court or in the state courts. The federal court judgment was not a judgment upon the merits such as to be res judicata on the question of the validity of the transaction involved in this action.

Appellants made a motion in the lower court for the transfer of the action to the common law docket, for trial by jury. In support of their contention that

the court erred in overruling this motion, the appellants rely upon section 12 of the Civil Code of Practice, which provides: "In an equitable action, properly commenced as such, either party may, by motion, have the case transferred to the ordinary docket for trial of any issue concerning which he is entitled to a jury trial; but either party may require every equitable issue to be disposed of before such transfer."

In applying this code provision, the courts have made a clear distinction between a purely legal issue in an equitable action, and a mere question of fact in an equitable action. If the cause of the action is purely equitable, but there is an issue of fact on which the determination of the equitable issue depends, the parties are not entitled as a matter of right to a jury trial, and the chancellor may or may not, in his discretion, obtain the advisory aid of a jury on the question of fact. Reese's Adm'r v. Youtsey, 113 Ky. 839, 69 S.W. 708. If the chancellor does submit an issue of fact to a jury, then the verdict is advisory only. Morawick v. Martineck's Guardian, 128 Ky. 155, 107 S.W. 759.

This action is one to set aside a fraudulent transfer, and in Schweitzer's Trustee v. Schweitzer, 237 Ky. 159, 35 S.W.2d 3, this Court held that such an action was purely equitable. It is true that in the Schweitzer case language was used indicating that the parties had the "right" to a trial by jury, but this was qualified by the statement that the verdict of the jury would be merely advisory, and not conclusive.

We conceive that the advisory character of the jury's verdict, and the discretionary power of the court to call in or not to call in a jury, go hand in hand. If the case is one in which the verdict will be advisory only, then it is one in which the court is not required to call in a jury. The reference in the Schweitzer case to the right to a jury trial must be considered as an inadvertence.

The issue of fact in this case was not one concerning which the defendants were "entitled" to a jury trial, within the meaning of Section 12 of the Civil Code of Practice, and the trial court was within its discretion in overruling the motion for transfer to the common law docket.

The question of whether the Cherokee Development Corporation is a proper party to the action does not seem to be of great materiality. The petition asks that the corporation be directed to transfer the stock, on its books, to the trustee in bankruptcy. We are of the opinion that it was proper for the corporation to be made a party for the purpose of securing such relief.

Reaching the merits of the case, we are confronted with the question as to whether KRS 404.020(2) is applicable to the transaction in question. The statute reads as follows: "(2) A gift, transfer or assignment of personal property between husband and wife shall not be valid as to third persons, unless it is in writing, and acknowledged and recorded as chattel mortgages are required to be acknowledged and recorded; but the recording of any such writing shall not make valid any such gift, transfer or assignment that is fraudulent or voidable as to creditors or purchasers."

It will be observed that the statute applies only to personal property, and it is reasonably clear that the statute contemplates the transfer of some specific, identifiable item of personal property from the ownership of one spouse to that of the other. The statute appears to have been designed to supplement KRS 378.040, which renders void, as to creditors and innocent purchasers, any alienation of or charge upon personal property without a transfer of possession or the recording of a written transfer or charge. The legislature no doubt recognized that KRS 378.040 would provide inadequate protection for creditors and purchasers in the case of husband and wife, where there would be no practicable means of distinguishing between possession by the husband and possession by the wife. Accordingly, the legislature provided that in the case of husband and wife, there must be a recorded writing in every case, mere transfer of possession not being sufficient.

KRS 404.020(2) was enacted as part of the Married Women's Property Act, which for the first time recognized the right of a married woman to own personal property free of any claim of her husband. Prior to that Act, the husband, upon reducing the wife's personal property to possession, became the absolute owner of the property. It is probable that the legislature, in enacting KRS 404.020(2), was concerned primarily with transfers from husband to wife, in the belief that in most cases a person dealing with a married man would assume that all of the personal property in the possession of the man and his wife was the property of the man.

█ Both KRS 378.040 and KRS 404.020 (2) are designed to protect the person who deals with another person on the strength of the latter's apparent ownership of personal property. Jones v. Louisville Tobacco Warehouse Co., 135 Ky. 824, 121 S.W. 633, 123 S.W. 307; Cartwright v. Ennis, 215 Ky. 3, 284 S.W. 87; Farmers Bank of Dry Ridge v. Ashcraft's Adm'r, 281 Ky. 758, 137 S.W.2d 422. Therefore, where there is no actual transfer of an identifiable item of personal property from one person to another, but only a transaction pursuant to which one party transfers from his possession one kind of property and the other party receives into his possession a different kind of property, there is no reason for the statutes to apply.

█ In the instant case, the husband started out with money, and the wife ended up with corporate stock. At no time was the corporate stock in the apparent ownership of the husband, except for the three shares which were issued to him and which he then endorsed to his wife. As to those three shares, we are of the opinion that the statute applies. As to the other 41 shares, the statute cannot apply, because those shares, as such, did not pass from the husband to the wife. The husband only furnished the consideration for which the corporation issued the shares directly to the wife. The purpose of the statute was not violated, because no third party had any occasion to rely upon apparent ownership of the stock by the husband.

It is true that the statute has been held applicable to transfers of corporate stock, and, in the cases so holding, little effect has been given to the theory of apparent ownership. See Hawley Coal Co. v. Bruce, 252 Ky. 455, 67 S.W.2d 703. Those cases have been decided on the literal meaning of the statute. Without questioning the correctness of those decisions, and assuming that apparent ownership is not the sole controlling factor, nevertheless it must be remembered that in this case we do not have a transfer of corporate stock from husband to wife, but, at the most, a purchase of stock by the husband for the wife. This transaction does not come within either the literal meaning or the object of the statute.

Although we hold that the transaction by which Mrs. Alt acquired the stock in the Cherokee Development Corporation was not void under KRS 404.020(2), except as to the three shares originally issued to Mr. Alt and endorsed by him to Mrs. Alt, it does not follow that the transaction must be upheld as to the other shares. There remains the question as to whether the transaction constituted a fraudulent conveyance in violation of KRS 378.010. The chancellor found that the transaction was fraudulent as to creditors, as well as being in violation of KRS 404.020(2).

Consideration of the question of fraud requires an examination of the circumstances leading up to the transaction involving the corporate stock, and the claims of the parties as to the purpose and object of the transaction.

It appears that Mrs. Alt, all during the marriage, and for a number of years prior thereto, was employed as an office worker. At the time of the transaction, the Alts had been married for 14 years, and Mrs. Alt testified that during this period she paid, out of her salary, practically all of the household expenses, and bought all of her own clothes and all of their daughter's clothes. In addition, she had invested some of her earnings in the homes in which the family had lived, including the one in which they were living at the time of the bankruptcy. She testified that from time to time her husband gave her sums of money in par-

tial reimbursement of what she had paid towards the living expenses of the family, but that he continued to owe her a large amount under an agreement that he would reimburse her for all the expenditures she had made. Both the Alts testified that, approximately eight years before the bankruptcy, Mr. Alt agreed that he would let Mrs. Alt have some property as security for the amount due to her, and as partial repayment of the moneys advanced by her.

Concerning the stock transaction, the Alts testified that the sum of $2,000 which Mr. Alt paid for the lot was money he owed to Mrs. Alt, that the lot was bought for her benefit, and that the issuance of the stock in exchange for the lot was in accordance with the understanding that the money used in buying the lot was really Mrs. Alt's money, which Mr. Alt was paying on her behalf.

Supporting their contention that the transaction was a bona fide repayment of money owed by Mr. Alt to his wife, the Alts point out that the transaction took place some 16 months before the bankruptcy, and that there is no proof that Mr. Alt was insolvent at the time of the transaction.

The claim of the trustee in bankruptcy that the transaction was made with intent to delay, hinder or defraud creditors is based upon the fact that, at the time of the transaction, numerous persons were asserting claims against Alt for damages arising out of defective construction of houses built and sold by Alt. The evidence shows that Alt had engaged in the business of building and selling houses, and that many of the purchasers were demanding that he remedy defects in the construction or furnish various items to complete the construction, and some of the purchasers were threatening suit. Beginning some seven or eight months prior to the stock transaction, the purchasers made constant and insistent demands upon Alt for settlement of their claims. They talked with him in person and called him by telephone. On some occasions they were unable to reach him by telephone, and they related their grievances to Mrs. Alt. At the time of the stock transaction, no suits had been brought, but later a number of suits were filed and eventually judgments totalling around $37,000 were obtained against Alt. From the evidence, it is clear that both the Alts knew of the claims of the dissatisfied purchasers, and had reason to anticipate that suits would be brought.

As concerns the good faith of the stock transaction, the fact that the Alts reasonably could anticipate the bringing of actions against Mr. Alt constituted a badge of fraud. Hager v. Coleman, 307 Ky. 74, 208 S.W.2d 518. The transaction being one between husband and wife, the burden was upon the wife to prove the bona fides of the transaction. Cloud v. Middleton, 241 Ky. 595, 44 S.W.2d 559.

We have held that a married woman may not advance money to her husband in an informal way during the years of the marriage, permitting him to invest it in property taken in his own name, and then set up the advancements as consideration for a conveyance which will defeat the husband's creditors. Kitchen v. Fischer, 293 Ky. 787, 170 S.W.2d 592.

While an intent to defraud is necessary to bring a transaction within the provisions of KRS 378.010, such intent may be presumed where the necessary consequence of a deliberate act by a debtor is to delay, hinder or defraud his creditors, E. L. Martin & Co. v. A. B. Maggard & Son, 206 Ky. 558, 267 S.W. 1102; Trustees of First Nat'l Bank v. Saufley, 268 Ky. 732, 105 S.W.2d 605.

The circumstances surrounding the transaction in this case were not such as to indicate a good faith purpose on the part of the husband to repay to his wife what he owed her. He did not pay any money over to her. He did not put the deed to the lot in her name. After the corporation was formed, he contributed sums of money to the corporation, of which he was president, without endeavoring to secure any evidence of a release of his alleged debt to his wife for the amounts paid. In the construction of the apartment building, he in effect contributed to the corporation the substantial sum of money that was due him under the contract for

architect's and engineer's fees, without any suggestion of an accounting or credit in accounts with his wife. Shortly before the bankruptcy, he sold his automobile and used the proceeds for the benefit of the corporation. We cannot escape the conclusion that the husband was merely continuing to carry on his business affairs in the name of the corporation, the stock of which was in the name of his wife. If the ransaction was a bona fide attempt to settle Alt's obligation to his wife, he would not have made the substantial contributions he made to the corporation without some specific agreement as to credit or some settlement of accounts with his wife.

This kind of loose dealings between husband and wife cannot be permitted to defeat the rights of creditors. We are of the opinion that the chancellor was correct in determining the transaction to be fraudulent.

The Alts contend that if the transaction was fraudulent, the only property transferred was the $2,000, and the three shares of stock endorsed by Mr. Alt to his wife, and that the creditors are entitled to recover only that much. This is on the theory that Mr. Alt gave Mrs. Alt the $2,000, and in buying the lot and conveying it to the corporation in exchange for the stock, he was spending for her the money he had given her. We do not so view the transaction. He did not give her the money and she never had it in her control or possession. The deed to the lot was not taken in her name. Up until the moment the stock was issued to Mrs. Alt, her husband was in complete control of the transaction. At his hands, though not directly from him, she received the 41 shares in the corporation. He caused the shares to be issued to her, and the shares constitute the property that she received in fraud of the creditors.

It is our conclusion that the 41 shares of stock issued directly to Mrs. Alt were received by her in fraud of her husband's creditors, within the terms of KRS 378.010, and that the three shares endorsed to her by her husband were received in a transfer that was void under the provisions of KRS 404.020(2).

Our decision on the main issues in the case renders moot the question of whether the lower court improperly appointed a receiver.

The judgments are affirmed on both appeals.