## KINCAID et al. v. BROWN'S ESTATE et al.

*Court of Appeals of Kentucky.*

May 8, 1953.

Petition for Rehearing Withdrawn
Dec. 18, 1953.

470

Frank S. Ginocchio, Lexington, for appellants.

Earle Fowler, Paul L. Brown and Frank Gilliam, Lexington, for appellees.

STANLEY, Commissioner.

Out of suits involving the tangled financial operations of Paul Brown have emerged for our consideration questions of priority of rights of his wife, his coappellee, Mrs. Lula Walker Brown, and liens of the appellants, Garvice D. Kincaid and Central Bank, to the balance of the proceeds from the sale of two pieces of property, one a certain warehouse and the other a residence in Lexington. The superior net equities adjudged to Mrs. Brown are about $9,600 in the warehouse proceeds and $2,200 in the residence. The effect of the judgment is to leave unsatisfied about $4,800 of a judgment awarded to the appellant Kincaid and nothing to apply on a judgment for a debt previously awarded the Central Bank. We consider separately the claims against the two pieces of property and the special contentions of the respective appellants.

Kincaid pleaded an implied vendor's lien on the warehouse property and an attachment lien as well. He rests his claim to the attachment lien upon the ground that a transfer of a one-half interest in the property to Mrs. Brown was void, being without consideration and made to defraud her husband's creditors, as well as being preferential in contemplation of insolvency. The chancellor adjudged Mrs. Brown to have been the owner of a one-half undivided interest in the warehouse property and that her interest is free from Kincaid's claimed liens. He awarded Kincaid a lien on the one-half interest owned by Brown and that is not questioned.

Brown purchased the warehouse property from the Tipkin Corporation, of which Kincaid was an officer and principal stockholder. Brown dealt only with Kincaid and regarded him as the vendor. He so pleaded and in effect testified. A deed was executed by the corporation, dated February 21, 1947. It was never recorded and was not produced on the trial. Brown testified and has insisted that he and his wife were named as joint grantees. His two brothers testify to having seen the deed in his office desk during the following summer and that Mrs. Brown was a grantee. But their testimony is not wholly consistent with the time Brown testified the deed was first delivered to him. On the other hand, Kincaid testifies very positively that Brown was the sole grantee. He is sustained by Robert C. Stiltz, Executive Vice President of the Bank of Commerce, who saw the deed in the latter part of 1948 or early in 1949 when Brown ap-

plied to that bank for assistance in refinancing the venture. A. B. Rouse, Jr., who examined the title, could not recall whether one or both were named as grantees. It was his practice to return deeds to parties from whom obtained, but he was not willing to say definitely he had returned this deed to Brown. He did return an envelope containing papers relating to the property to him and had not been able to find the deed in his office. There are many circumstances tending to corroborate the evidence that Brown alone was named as the grantee. Among these circumstances is Brown's failure to produce or account for a prior written contract of purchase and sale. Also, after being compelled by the court to give her deposition as on cross-examination early in the proceeding, Mrs. Brown testified she had had no part in the transaction and did not know whether or not she had paid any of the consideration. She showed an amazing ignorance of the transaction and refused and evaded answers to pertinent questions. However, later, when testifying directly, she seemed to have known what was going on and testified unequivocally that she had paid $3,000 in currency.

The consideration for the purchase was either $35,000 or $38,000 consisting, as Brown testified, of his check for $2,000 and currency of $3,000 which belonged to his wife (though Kincaid says only the $2,000 was then paid), the assumption of a mortgage of $18,000 held by the Combs Lumber Co., and twelve plain promissory notes aggregating $15,000 executed by Brown alone to Kincaid as payee. Thus, the notes were part of the purchase price. Kincaid explains the failure to retain a lien to secure the notes was that Brown contemplated refinancing the Combs mortgage debt and did not want so large a second lien to appear of record, and that he had promised to give Kincaid a second mortgage when the refinancing had been accomplished. Brown merely says that Kincaid did not want any mortgage. He testified the reason his wife did not sign the notes was simply that Kincaid did not ask her to do so although he was, according to Brown, made aware that she was a joint purchaser.

By the latter part of 1948 Brown had paid $3,000 of the notes. In obtaining a loan from the Bank of Commerce with which to pay the Combs mortgage debt, Brown turned over the first deed to the bank. Its attorney, in checking the title, discovered an error in the description of the property. The attorney suggested that another deed be executed by the Tipkin Corporation with the correct description and asked Kincaid, at the instance of Brown, if he would object to including Mrs. Brown as a cograntee. Kincaid agreed to it upon the promise that when the new loan had been completed they would immediately execute a second mortgage to secure the balance of $12,000 owing on the notes. The new deed was executed on February 17, 1949. It makes no reference to the first deed and states the usual nominal consideration. Not only Kincaid and his wife but Robert Tipton and his wife signed the new deed because Kincaid and Tipton had owned the property before the grantor, the Tipkin Corporation, their company. It appears that their conveyance to the corporation contained the same error in the description. The Combs Lumber Company also signed the deed as one of the parties of the third part.

Upon Brown's refusal to execute the second mortgage, Kincaid filed suit upon the notes, obtained an attachment, which was levied on the warehouse property, and recorded a lis pendens notice. Three days after the suit was filed, a mortgage of the property by Brown to Mrs. Brown to secure a debt he owed her of $25,000 was placed of record. This bore the same date as the second deed, February 17, 1949. Upon a trial of the issues raised by Brown's answer, counterclaim and set-off, a verdict was returned for Kincaid on his notes. Judgment was entered accordingly and the attachment sustained. The $25,000 mortgage to Mrs. Brown was also declared void during the course of the litigation. No appeals from these judgments were prosecuted.

Whether or not Mrs. Brown was a joint purchaser or named as cograntee in

the original deed, Kincaid had an equitable vendor's lien on the entire property.

An equitable vendor's lien is based on the principle that one who gets the estate of another ought not in good conscience be allowed to keep it without paying the consideration. It is good as between the parties (no bona fide creditors being concerned here) although the deed to the property is silent in that regard. Jackson v. Engle, 230 Ky. 558, 20 S.W.2d 460; Ford v. Ford's Ex'r, 233 Ky. 673, 26 S.W.2d 551; Pace v. Berry, 176 Ky. 61, 195 S.W. 131. While ordinarily such lien is restricted to the grantor, it may arise in favor of a third person who, though not nominally the vendor, was virtually and to all practical purposes as much a vendor as if he had signed the deed. Thornton v. Knox's Ex'r, 45 Ky. 74, 6 B.Mon. 74, 76; Honore's Ex'r v. Bakewell, 45 Ky. 67, 6 B. Mon. 67, 43 Am.Dec. 147. Taking a note of the vendee as part of the consideration is no waiver of the purchase money lien. The rule goes further. It is competent for the vendor and vendee of land to agree that the grantee shall pay the purchase price or a part of it to a third person. The vendor's right inures to the benefit of such person, who may enforce the lien as if it had been retained for the specific benefit of the grantor and subsequently assigned to the third person. Campbell v. Salyer, 290 Ky. 493, 161 S.W.2d 596; 55 Am.Jur., Vendor and Purchaser, Sec. 482.

Even if we accept the contentions of the appellees that both of them were purchasers of the property, then the vendor's lien covered the complete estate. Ford v. Ford's Ex'r, supra, 233 Ky. 673, 26 S.W.2d 551. The fact that Mrs. Brown was not personally liable on the notes makes no difference. Gray v. Grimm, 157 Ky. 603, 163 S.W. 762.

The appellees argue that the appellant Kincaid may not avail himself of the lien because he was a volunteer in accepting the notes; also, that he comes into court with unclean hands. We find as a matter of fact there is no merit in these arguments. A recitation of the claim of un-

clean hands would be only to encumber the opinion with a statement of evidence wholly insufficient.

Our conclusion is that Kincaid had a vendor's lien on the property, which follows the proceeds, and that such lien is superior to the attachment lien of the Central Bank.

Appellant Kincaid attacks the transaction on the ground of absence of consideration and as a fraudulent conveyance or transfer to cheat and hinder Brown's creditors, particularly himself. We think Kincaid is estopped to attack the inclusion of Mrs. Brown as cograntee in the second deed. With full knowledge of the facts, he assented and joined as a party to the instrument. He agreed, as he testified, that it was in consideration of Brown's promise that he and his wife would thereafter execute a mortgage on the property to secure Brown's indebtedness. Bull v. Harris, 57 Ky. 195, 18 B. Mon. 195; 37 C.J.S., Fraudulent Conveyances, § 78; 24 Am.Jur., Fraudulent Conveyances, Sec. 1147.

We now consider the judgment denying attachment liens to the Central Bank upon the warehouse property and also upon the residence property. The bank had obtained a judgment for $24,833 with interest against Paul Brown as comaker with his corporate firm on a note dated November 10, 1948. Upon return of an execution nulla bona, the bank instituted suit against Paul Brown and his wife and had a general order of attachment levied upon several pieces of real estate, including both the warehouse and the residence property, and sought to subject them to the satisfaction of its judgment debt.

We are of opinion that the weight of the evidence that Mrs. Brown was not an original joint purchaser and was not named a cograntee is so great as to require a decision different from that implicit in the chancellor's judgment.

The appellees contend that there was not and could not have been a

fraudulent conveyance by Brown to his wife by the second deed because he was not a grantor but a cograntee and, as he contended, was such in the first deed. Counsel for appellees do not cite a case on the point, and counsel for the appellants have not favored us with a response to the argument. The transaction in principle is the equivalent of a purchaser procuring the seller to convey the property bought to another person for the purchaser's benefit. Though perhaps in form this was an oral assignment, Brown was in fact the transferor of a half interest. This may be regarded, under the circumstances, as the equivalent of being a grantor and the transaction as a conveyance of the property. The statute, KRS 378.010, reads, "Every gift, conveyance, assignment or transfer" of real estate "made with the intent to delay, hinder or defraud creditors" shall be void against such creditors. KRS 378.020 uses the same language in dealing with similar transactions for which there was no consideration, and KRS 378.-060, covering preferential transfers, is expressed in part in even broader terms, namely, "any act or device done or resorted to". It is not the nature or form of the transaction but the presence of fraud which brings a case within the terms of the statutes. They are broad enough to include every transaction by which creditors or others may be defrauded. 37 C.J. S., Fraudulent Conveyances, §§ 38, 254; 24 Am.Jur., Fraudulent Conveyances, Secs. 62, 69. Transactions between husband and wife will be closely scrutinized to see that no subterfuge is employed. Leitchfield Milling Co. v. Rogers, 239 Ky. 481, 39 S. W.2d 961; Hoskins v. Hoskins' Trustee, 241 Ky. 420, 44 S.W.2d 302. Of particular application are cases which hold that where an insolvent husband pays for land and has it conveyed to his wife, it is fraudulent toward his creditors, and she acquires no interest. Adams, Ex'x v. O'Rear, 80 Ky. 129, 3 Ky.Law Rep. 605; Straus v. Head, 21 S.W. 537, 14 Ky.Law Rep. 740; Ahlering's Ex'r v. Speckman, 99 S.W. 973, 30 Ky.Law Rep. 940; Alt v. Burt, Ky., 242 S.W.2d 974. Of like character are cases where other members of the same family

are the parties., First National Bank of Jackson v. Short, 234 Ky. 130, 27 S.W.2d 668, and cases cited.

At the time of this transaction in February, 1949, Brown was heavily in debt, some of which was secured and some unsecured, some was individual and some as joint maker of notes with Brown Brothers Distributing Company, which was insolvent. Indeed, Brown does not contradict the testimony of Kincaid, who was the president of the Central Bank, that in discussing his financial condition on November 10, 1948, Brown told him and another officer of the bank that if he was compelled to pay his company's note, he would be hopelessly insolvent. He had withheld the first deed from record. While Kincaid was pressing Brown upon his personal notes, instead of securing him by a second mortgage, Brown immediately upon obtaining the second deed executed a mortgage to his wife for $25,000 on his half interest in the warehouse. Though bearing the same date as the deed, February 17, 1949, the mortgage was not acknowledged or recorded by Brown until March 21, four days after Kincaid had filed suit and obtained an attachment. The appellees say this mortgage was in lieu of one for $15,000 which had been executed soon after the first deed was obtained. This was concealed, or at least was not mentioned to the bankers during the negotiations to refinance the venture. As we have said, there was no appeal from the judgment declaring the $25,000 mortgage void. During the period of ownership Brown was the sole manager of the property, using the receipts for his individual business purposes and apparently without keeping records of disposition. His wife appears not to have participated in any way or even to have undertaken any proprietorship. The property was never listed by them for taxation and remained in the name of the previous owner.

Mrs. Brown had not had any estate or personal income except that claimed to have been earned from dealing jointly with her husband in real estate. The testimony is, in short, that several

474

years ago they began with Brown's small capital and his credit to buy and sell real estate and together they had accumulated from these ventures a large sum of money. They have contended there was a legal partnership up to the time Brown went into business with his brothers which was in January, 1946. At that time, it is claimed, her part of the profits was between $30,000 and $40,000. Her husband says he borrowed about $20,000 for his new venture, but it does not appear any documentary evidence was executed. It was claimed Mrs. Brown purchased the half interest in the warehouse with these profits and what her husband owed her. As we read the testimony, there was never any legal partnership. There was only the active co-operative effort of a husband and wife in accumulating an estate. With minor exceptions, the bank account and the transactions were in Brown's name alone. The testimony is that Mrs. Brown kept her share of the proceeds of earnings in large sums of cash at home. Accepting this as true, there are several rules of law applicable on this point. One in particularity is that "a married woman may not advance money to her husband in an informal way during the years of their marriage and after he has invested it in property in his own name, then be allowed to come in ahead of her husband's creditors." Kitchen v. Fischer, 293 Ky. 787, 170 S.W.2d 592, 593; Alt v. Burt, Ky., 242 S.W.2d 974. Equity will not allow a husband to render gratuitous services to his wife's separate estate to cloak fraud against his creditors, and real estate purchased with the profits of the business is subject to the husband's debts. Blackburn v. Thompson, 66 S.W. 5, 23 Ky.Law Rep. 1723, 56 L.R.A. 938; Patton's Ex'r v. Smith, 130 Ky. 819, 114 S.W. 315, 23 L.R.A.,N.S., 1124; Ely & Walker Dry Goods Co. v. Freedberg, 226 Ky. 713, 11 S.W.2d 964. The principle was recognized and other cases cited in its support but held to be inapplicable to the facts in Leitchfield Milling Co. v. Rogers, 239 Ky. 481, 39 S.W.2d 961.

As we have stated above, financial transactions between husband and wife are closely scrutinized to see that they are fair and honest. And, as said in Turner v. Hammock, 229 Ky. 836, 18 S.W. 2d 285, 286, "the fact that a conveyance prejudices the right of a creditor is a dominant element in determining its character". The foregoing and other circumstances recited earlier in the opinion, as well as others of lesser importance, are all so wrapped around with suspicion as to constitute badges of fraud. This placed the burden upon the participants to establish the transfer of a joint interest in the property to the wife to have been bona fides and free from vice. Wyan v. Raisin Monumental Co., 243 Ky. 431, 48 S.W.2d 1050; Howard v. First National Bank of Harlan, 270 Ky. 586, 110 S.W.2d 293; Pope v. Cawood, 293 Ky. 660, 170 S.W.2d 55; Smith v. Holland, 298 Ky. 598, 183 S. W.2d 647. There are many other cases to the same effect.

We are of opinion the burden was not met and that the transaction was of such character as not to exempt the entire estate in the warehouse property from the debt of the Central Bank, hence the court should have made it subject to the bank's attachment lien.

We come to the Clay Avenue residence.

It was alleged that Brown had individually purchased the residence property and paid part of the consideration with his individual funds, but had caused the seller to convey it to his wife with the fraudulent intent to cheat, hinder and delay his creditors and without consideration and it was, therefore, void. It is also pleaded that this was done to prefer her to the exclusion of his other creditors which made it a voidable transfer. The property was bought at an auction sale from the Security Trust Co. as trustee on June 11, 1948, by Brown for $12,000 of which 10% was immediately payable in cash, 30% within ten days and the balance in one, two and three years. Brown promptly directed that the deed be made to him and his wife jointly with a survivorship clause. Brown paid the cash consideration with his individual checks on June 11, October 1 and December 4, 1948,

a total of $4,997.50. Though the deed is dated October 1, 1948, it was not signed until December 8, 1948. By a writing on the bill of sale of date December 15, 1948, Brown assigned all his interest in the property and purchase to his wife and requested the vendor make the deed to her alone and that was done on that day. This was at the request of the Trust Company in order to clear its records. The deed to Mrs. Brown was not recorded until April 5, 1949. The original suit on the note was filed within six months before that date and a general order of attachment procured. It appears judgment for the debt was rendered December 9, 1949. The nulla bona suit was filed September 8, 1950.

Much of what has been written concerning the financial conditions and transactions of the parties in relation to the warehouse property applies to the residence property also. Of special relevancy is the uncontradicted evidence and admission in appellee's brief that when Brown endorsed the large note of his company to the bank, he became insolvent. This was in November, 1948.

Mrs. Brown testified that she gave her husband $4,800 to pay on this property. This was done in three installments of currency of $1,000 each and some war savings bonds on June 11, June 25, and July 11, 1948. As we have said, the payments were by Brown's individual checks and his bank account does not reflect the deposit of the cash. When pressed upon cross-examination for the source of this money, Mrs. Brown declined to give it except to say that she had saved it. When asked where it came from or how she had saved it she responded that that was something "I don't even tell my husband." There are some inconsistencies between the testimony of Mr. and Mrs. Brown on this matter.

We have (1) insolvency; (2) the payment by Brown personally of all the money that was paid; (3) the fact that although at the time of sale he had directed that the deed be made to him and his wife jointly, it was with a survivorship clause; (4) the assignment of his interest to his wife after admitted insolvency; and (5) the withholding of the deed from record until after the suit had been filed. In connection with the dubious quality of the other transactions, these things reveal an effort to keep the property from becoming liable for Brown's debts, and to save something from the impending storm. We are of opinion, therefore, the equity in this property adjudged to Mrs. Brown should have been adjudged to the bank.

Judgment is reversed.